THE METALLOGRAPH CORPORATION, Appellant, *v.* ARMA ENGINEERING COMPANY, INC., Respondent.

First Department, April 20, 1923.

Sales — action to recover contract price of aeronautical instruments — contract was absolute for manufacture and sale of stated number at price to include cost of tools and dies — contract was not rescinded — good tender made — error to set aside verdict in favor of plaintiff.

In an action to recover the contract price for the manufacture and sale of 200 sets of aeronautical instruments it appeared that the contract made provided absolutely for the manufacture and sale of that number of sets and contingently for the manufacture and sale of 4,800 additional sets; that the price to be paid for the 200 sets included the cost of the manufacture of special tools and dies with which to make the instruments; that thereafter the defendant informed the plaintiff that the Director of Aircraft Production directed the defendant to limit the production to 10, but that shortly thereafter the defendant wrote the plaintiff that the Bureau of Aircraft Production had instructed them to proceed with the completion of the special tools and dies and asked the plaintiff to furnish defendant with an estimate of the cost of the manufacture of the tools and dies; that at the time the last letter was received

the plaintiff had already completed the tools and dies and a few sets of the instruments; that the defendant then wrote the plaintiff requesting it to complete one set of the instruments before proceeding with the balance; that the plaintiff completed three sets of the instruments, submitted them to the defendant and asked for instructions as to the delivery of the remaining 197 sets but no instructions were ever given and no complaint was ever made that the three sets did not comply with the requirements.

*Held*, that there was no cancellation or rescission of the contract which was absolute in its terms as to the 200 sets and not dependent upon any action by the Bureau of Aircraft Production, and the request for instructions as to the delivery of the remaining sets constituted a sufficient tender to entitle the plaintiff to recover, it having completed the remaining sets within a few days after asking for instructions;

That it was error to set aside the verdict of the jury in favor of the plaintiff.

APPEAL by the plaintiff, The Metallograph Corporation, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 10th day of January, 1922, granting defendant's motion to set aside the verdict of a jury in favor of the plaintiff.

*Mark Eisner* [*I. Maurice Wormser* of counsel; *Irwin M. Berliner* with him on the brief], for the appellant.

*William Hayward* [*Mary R. Towle* of counsel], for the respondent.

SMITH, J.:

It appears that the defendant had some government contract by which it was to furnish certain aeronautical instruments. A part of those instruments consisted of certain rings which were to be cut in a certain way and which were to have certain scales thereupon. The defendant made a contract with the plaintiff for the furnishing of these rings, providing for the furnishing of 200 sets absolutely and 4,800 sets thereafter contingently. It seems that in order to make these rings it was necessary to make tools and dies, and, therefore, it was provided that for the first 200 for which an absolute contract was made they should charge sixty-seven dollars and fifty cents a set, and for all amounts ordered up to the 4,800 they should charge four dollars and fifty cents a set. The plaintiff proceeded to make these tools and dies and had completed them and had nearly completed some of the rings which were to be manufactured under the contract, when the defendant sent to the plaintiff a letter from the Director of Aircraft Production, directing the defendant to limit the production upon the order for these navigation sets to ten. This letter was sent by the defendant to the plaintiff, although the defendant did not cancel any part of its contract, other than may be inferred from the sending of this letter. It will be noted that the plaintiff had no contract with the Director of Aircraft Production, but simply

had its contract with the defendant, and there is evidence to the effect that the defendant said that however much was needed by the government, there would be a market for these instruments and thereupon the contract was made for 200 sets absolutely and contingently for the balance up to 5,000 sets.

After this letter from the Director of Aircraft Production, which was forwarded to the plaintiff, and upon February 17, 1919, the defendant wrote to the plaintiff as follows: " We have received instructions from the Bureau of Aircraft Production to proceed with the completion of special tools, dies, jigs and fixtures for the manufacture of the McKnight Aerial Navigation Sets, the work upon which was recently suspended by order of that Bureau.

" They can give us at the present time no definite information as to the quantity of equipments they will desire, but assure us they will place an order for some of these equipments, and at their request we have submitted quotations on lots of 500 and 1,000. They further state that by the time we have tools and special fixtures completed they will have determined the number of equipments they will purchase.

" It is therefore requested that you resume the manufacture of tools for the parts covered by our order #2347 to you; also furnish us with an estimate of the cost involved in the manufacture of these special tools, dies, jigs and fixtures. Kindly advise us by return mail when you expect to have tools completed."

To this letter of February seventeenth, the plaintiff replied, upon February eighteenth:

" GENTLEMEN.— We have come into possession of your favor of the 17th inst., from which we note with pleasure that you have received instructions from the Bureau of Aircraft Production to proceed with the manufacture of the McKnight Aerial Navigational sets, and that you have submitted now new quotations on lots of 500 and 1,000.

" From the three sets handed to you yesterday by our Mr. Newell, you will note that our die and tool work, as well as that of the graduations, is completely finished and the bill rendered to you under date of Feb. 15th shows you that there will be no additional charge to you beyond the amount of $13,400 which includes delivery of 200 sets in accordance with your order of Jan. 15th, as amended in your letter to us of Jan. 16th.

" Awaiting your further instructions, we beg to remain,
"Yours very truly."

The court submitted to the jury the question as to whether this contract had been rescinded and the jury found for the

plaintiff. The court thereupon set aside the verdict and ordered a new trial.

I think the order was wrong and should be reversed and the verdict reinstated. The contract was not made upon a contingency of any contract between the defendant and the government, but was an absolute contract for the manufacture of 200 sets upon which the price was so fixed as to include the cost of manufacturing tools and dies. The reduction of the amount by the Aircraft Bureau to ten sets was a matter with which the plaintiff was not concerned.

There is no act shown in this case to the effect that this original contract was ever canceled or intended to be canceled by the defendant. When the letter from the Bureau of Aircraft Production was forwarded to the plaintiff there was no direction to stop production of the 200 sets as called for by the contract. Two hundred sets were then made by the plaintiff. Three of these sets were forwarded to the defendant upon the fifteenth of February with a bill for the entire 200 sets. There is no letter making complaint of that bill or making claim that the original contract was canceled and the plaintiff might well have considered its importance simply as bearing upon the remaining 4,800 sets which were to be produced only as ordered by the defendant.

Thereafter, and upon February seventeenth, the defendant wrote to the plaintiff that it had received instructions to proceed with the completion of special tools, dies, jigs and fixtures for the manufacture of these navigation sets, the work upon which was recently suspended by order of that Bureau. The letter stated that they were submitting quotations on lots of 500 and 1,000 to the government, and asked for an estimate on the cost involved in the manufacture of these special tools, dies, jigs and fixtures. It is argued that this letter assumes that the former contract had been canceled by asking for this special price for these dies and jigs and tools. But this assumption does not necessarily follow. The letter was written apparently before the bill of the plaintiff was received, or the letter of February fifteenth from the plaintiff to the defendant was received. Moreover, the defendant may have desired such an estimate for the purpose of proposing some other contract with the plaintiff. On February twenty-seventh the defendant sent to the plaintiff a Mr. Lundgren, who was to go into the details of the etching upon these scales, and the letter stated: " It is requested that you complete one set of rings with all of the etching upon them, and then submit them to us for our final approval *before you proceed with the balance.*" This letter would seem to indicate that the defendant did not consider that

this original contract had been canceled. It appears from the evidence that these dies, tools and jigs had nothing whatever to do with the graduations which were to be put upon the rings thereafter. Those graduations were not put upon the rings which were sent upon February fifteenth, because they had not been sent to the plaintiff as was required by the contract. It was then supposed that the rings could be completed and the graduations put thereupon after the rings were completed. In pursuance of this letter of February twenty-seventh they made three sets of these rings with the graduations etched thereupon. In making these it was found to be impractical to put the graduations upon these rings after the rings were cut out. The plaintiff thereupon scrapped the 197 sets of rings without the graduations which it had theretofore made for the defendant and made 200 other rings with the graduations as required by the contract. With the letter of March sixth to the defendant the plaintiff sent three sets of rings with the graduations thereupon and asked for instructions as to the delivery of the remaining 197 sets. No such instructions were given. The receipt of the rings was acknowledged. Plaintiff completed, however, the remaining 197 sets within a week or ten days after March sixth. No complaint was ever made of the three sets that were sent to them upon March sixth, that they were not in strict accordance with the contract. The request for instructions as to the 197 sets constituted, in my judgment, a sufficient tender to entitle the plaintiff to recover, having completed the new sets with the graduations, complete, within a week or ten days thereafter. Furthermore, failure to give instructions as to when the 197 sets should be delivered constituted a waiver of further tender, and no motion was at any time made to dismiss for failure to tender the 197 sets on March sixth.

It is well-settled law that the cancellation or rescission of a contract must be clearly expressed. During all of this correspondence there is not one word said about either cancellation or rescission of this contract, and the whole course of conduct between the parties seems to indicate that they regarded the contract as a subsisting and binding obligation upon both parties, and with the completion of the contract within a week or ten days after March sixth and a sufficient tender and a request for instructions where to deliver the balance of these rings, the plaintiff had, I think, established the defendant's liability upon the 200 sets provided for in the original contract.

There is considerable said in the briefs about the reinstatement of this contract if canceled. But a contract not canceled needs

no reinstatement. While the plaintiff made entire new sets of these rings in order that it might more accurately place the graduations thereupon, no extra charge is asked. It simply asks for the stipulated contract price, and with the finding of the jury that the contract was not rescinded or canceled, based, as I view it, upon sufficient proof, I think the learned trial judge was in error in setting aside their verdict.

The order setting aside the verdict should, therefore, be reversed, with costs to the appellant, and the verdict reinstated.

DOWLING, MERRELL, FINCH and McAVOY, JJ., concur.

Order reversed, with costs and disbursements, and verdict reinstated.