UNITED STATES FIDELITY & GUARANTY COMPANY *v.* SELLERS.

Opinion delivered November 5, 1923.

1. MUNICIPAL CORPORATIONS—JOINT CONTRACT FOR PAVING.—Where a contractor violates his contract with a paving district, and he and his surety made a new contract obligating them to perform same, the surety was bound as a principal contractor.

2. CONTRACTS—DUTY OF CONSTRUCTION.—It is the duty of the courts to construe written contracts and declare their meaning.

3. CONTRACTS — CONSTRUCTION — EXTRANEOUS CIRCUMSTANCES. — Courts may acquaint themselves with the persons and circumstances that are the subject of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, in order to ascertain the intention of the parties from the language used.

4. CONTRACTS — CONSTRUCTION AS A WHOLE.— A written contract must be considered as a whole in determining the meaning of the contract as a whole.

5. CONTRACTS — WHEREAS CLAUSES.— In construing a contract, "whereas" clauses setting forth reasons or inducements for entering into it must be considered to determine the true intention of the parties.

Appeal from St. Francis Circuit Court; *J. M. Jackson,* Judge; affirmed.

*Mann & Mann,* for appellant.

The appellant was simply a guarantor for the contractor, not a partner. The contract should be construed as a whole. 94 Ark. 461; 93 Ark. 497. In construing the contract the court should put itself in the place of the parties to the agreement, and thereby ascertain the intent of the parties. 113 Ark. 174.

*C. W. Norton,* for appellee.

The contract refers to appellant as a party to it. At any rate, appellant knew what the actual recitals of the contract were, and it is therefore bound by the meaning of the language employed. 146 Ark. 127.

WOOD, J. The appellee instituted this action against Jos. McCoppin and the appellant, and alleged that he and one Joseph McCoppin, for himself and as agent for the appellant, entered into a contract with the appellee by which appellee was to haul gravel and sand to be used in the construction of pavements for Forrest City Improvement District No. 5. He alleged that McCoppin undertook and agreed to pay the plaintiff $1.50 for each yard of sand and gravel hauled from Little Crow Creek to Forrest City and $1.85 for each yard of sand and gravel hauled from Big Crow Creek to Forrest City; that at the time the contract was made it was represented to the appellee that there were 13,075 yards of gravel and sand to be hauled under the contract, and that, in fact, there was such an amount, and that appellee, relying upon such estimate, ordered, at great expense in price, the necessary equipment to perform the contract. He further alleged that, pursuant to such contract, appellee hauled 3,075 yards of sand and gravel, which entitled him to a payment of $5,579.11, of which amount the appellant had paid $4,927.91, leaving a balance of $851.20. He further alleged that on the 9th of July the appellant notified the appellee that the contract would be no longer recognized by the appellant, and thereby the appellant breached the contract. He further alleged that at the time of the breach of said contract there remained to be hauled 10,000 yards of sand and gravel; that the difference between the contract price as made by the parties for the hauling of the gravel and sand and the reasonable cost to the appellee of hauling the same amounted to forty cents per cubic yard, or a total of $4,000. He further alleged that the appellant,

the guaranty company, executed a bond for the benefit of all persons doing labor or furnishing material in said work for the benefit of the appellee, conditioned that Joseph McCoppin should pay all just claims for the same. Appellee prayed for judgment against McCoppin and the guaranty company in the sum of $4,851.20.

McCoppin answered and denied all the material allegations of the complaint. The guaranty company answered adopting the answer of McCoppin, so far as applicable, and denied that McCoppin, as its agent, contracted with the appellee as set up in the complaint, and averred that, if McCoppin did undertake to contract in the name of the guaranty company, he had no authority to do so. The guaranty company denied that it had any contract with the appellee for any purpose, and especially for the hauling of sand and gravel for McCoppin. It is alleged that the bond executed by it was for the sole benefit of Forrest City Improvement District No. 5 of Forrest City, Arkansas, and that, under the terms of said bond the guaranty company did not make itself liable for material furnished or labor done or performed by any person for McCoppin or for Forrest City Improvement District No. 5.

The appellee testified in his own behalf, and, without setting out his testimony in detail, it suffices here to state that his testimony tended to support the allegations of his complaint. Appellee introduced the following paper, which was signed by him: "Exhibit 6: I will haul gravel on the street of Forrest City from Little Crow Creek for $1.50 per yard. I will haul from Big Crow Creek for $1.85 per yard; and also agree to furnish three teams on the streets and two at the creek." Concerning this paper, appellee testified that it was a simple bid on the job, and he was to have a contract afterwards. McCoppin testified, among other things, concerning this paper that he understood that it constituted the entire contract between him and Sellers the moment Sellers gave it to him. He understood that

it was left open for him to stop it or for Sellers to quit hauling. What witness meant was that the writing didn't apply to the whole contract. Witness agreed to make advances to Sellers for labor and to retain a certain amount as percentage, none of which was in the bid. This was agreed to before Sellers went to work. This didn't become a part of the contract, but Sellers came to him and said that he didn't have the means to pay his labor, and asked if he would advance the money to pay it, and witness told him he would.

The guaranty company was not a contractor on the job, as witness understood, but was merely on witness' bond. The estimates for the work had written across the head of each, "Jos. McCoppin, U. S. Fidelity & Guaranty Company, Contractors." These estimates were furnished by the engineer.

The contract between Forrest City Improvement District No. 5, party of the first part, and Jos. McCoppin and U. S. Fidelity & Guaranty Company, surety, parties of the second part, executed in April, 1921, was introduced in evidence. This contract, by way of inducement, recites that a contract has been entered into between the party of the first part and McCoppin on the 30th of April, 1919, to do certain paving in the city of Forrest City; that the guaranty company was a surety on McCoppin's bond for the faithful performance of the contract; that a suit had been filed by the district against McCoppin and the guaranty company, alleging that McCoppin had breached the contract, and the bond further recites that the parties of the second part were desirous of completing the work, and that the party of the first part, the district, was willing that same be done upon the following conditions: The first paragraph, stating the conditions, was that the second parties were to do all things necessary for the completion of the pavements as provided in the contract. The second was for the manner in which payments were to be made. The third

provided for an additional sum to be paid the engineer. The fourth provided that the work should be prosecuted diligently and without unnecessary delay by the parties of the second part, and the work was to begin at once. The fifth specified that, in case the parties of the second part completed the work as provided in the original contract, then the penalty of $10 per day as prescribed in that contract was waived, otherwise to remain in full force and effect. It further recited that none of the parties waived any forfeitures or rights, except as therein provided, that any of the parties may have had under the original contract, and that, in case the parties of the second part completed the work as provided in the contract, the suit pending in the circuit court by the district against the parties of the second part should be dismissed at the cost of the parties of the second part.

At the request of the appellee the court, among other instructions, gave the following:

"No. 2. The writing by which Mr. Sellers proposed to haul the gravel for Mr. McCoppin is not a completed contract. There is no written contract between the parties, plaintiff and defendant, and you will look to the verbal testimony herein to establish what their contract was. A verbal contract is good for such matters as are in controversy between the parties hereto; it is not required to be in writing."

The court instructed the jury, at the request of the appellants, "that the writing evidencing the offer made by the plaintiff, if accepted by McCoppin, would constitute a contract between the parties, and if the plaintiff did not offer to haul all gravel for the entire paving contract, the defendant would not be liable." And further, that "in determining what the contract was between the parties they should take into consideration all the facts and circumstances in deciding the writing evidencing the offer." The court refused to grant the following prayer of appellant: No. 1. "The jury is instructed that, in determining the issues as to the U. S.

Fidelity & Guaranty Company, it would not be liable in this case for profits on material not hauled by defendant.'' The appellant duly objected and excepted to the ruling of the court in refusing this prayer.

The jury returned a verdict in favor of the appellee in the sum of $841.75. Judgment was entered in this amount against the appellant, from which it prosecutes this appeal.

1. The appellant contends that the court erred in refusing its prayer for instruction No. 1, telling the jury that the guaranty company would not be liable for profits on material not hauled by the appellee. The appellant contends that it was only a surety for McCoppin, and therefore was in no way interested in the profits that might accrue to him, and that it was not liable to the appellee for any profits that might have been received by him under his contract with McCoppin. The court, among other instructions, gave the following:

''No. 4. If you find, from the contract between the improvement district upon the one hand and McCoppin and the bonding company upon the other hand, that the bonding company undertook with McCoppin to complete the paved streets, then the bonding company becomes a joint contractor with McCoppin, and is liable to the same extent he is, if you find that they are liable at all. And in determining the contract between the parties, you are to take into consideration all the facts and circumstances, including the writing evidencing the offer, that is, the written offer that has been introduced here in evidence and read in your presence.''

This instruction submits to the jury the issue as to whether or not the guaranty company was a joint contractor with McCoppin to complete the paved streets for the improvement district. The instruction in this respect was more favorable to the appellant than it was entitled to, for the court should have construed the contract and declared as a matter of law that the guaranty company was a joint contractor with McCoppin to

complete the work of the district as provided in the original contract between McCoppin and the district. It is a fundamental rule of construction that "courts may acquaint themselves with the persons and circumstances that are subjects of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, in order to ascertain the intention of the parties from the language used. The contract must be construed as a whole, all of its parts being considered, in order to determine the meaning of any part, as well as the whole." *Wood* v. *Kelsey*, 90 Ark. 272; *Reed Drug Store* v. *Hessig-Ellis Drug Co.*, 93 Ark. 497-501; *Fort Smith Light & Traction Co.* v. *Kelly*, 94 Ark. 461; *Maloney* v. *Maryland Casualty Co.*, 103 Ark. 174; *Connelly* v. *Parkes, ante*, p. 496.

The "whereas" clauses of the contract set forth the reasons or inducements for entering into it. These, to be sure, must be considered in determining the true intention of the parties in entering into the contract. *Reed Drug Store* v. *Hessig-Ellis Drug Co.*, *supra*; *Fort Smith Light & Traction Co.* v. *Kelly*, *supra*.

When these rules are applied to the contract under consideration it is clear that the guaranty company bound itself to complete the pavement according to the original contract between McCoppin and the district. The contractual clauses of the contract are unambiguous and leave no room for any other interpretation.

2. Appellant contends that the court erred in giving appellee's prayer for instruction No. 2. There is no error in this instruction. The testimony of both McCoppin and the appellee was to the effect that the paper containing the proposal or offer of the appellee to furnish teams and haul gravel at a certain price was not the complete contract. Appellee testified that McCoppin and witness did not consider the little scrap of paper as being a written contract. McCoppin testified

as follows: Witness didn't consider the writing of Sellers as a completed contract * * * . He didn't rely on it as a completed contract. "He didn't understand it to be the entire contract. That it didn't apply to the whole contract;" and he further testified on cross-examination that "he understood that the piece of paper constituted the entire contract between him and Sellers the moment he gave it to him." Witness "didn't know how the question was put to him in the morning, but that what he meant was that the writing didn't apply to the whole contract." The writing itself shows that it was not a completed contract. So the court did not err in telling the jury that there was no written contract between McCoppin and the appellee for the hauling of the gravel, nor did the court err in telling the jury that they should look to the verbal testimony to establish what the contract was between them.

We do not construe the language of the instruction as excluding the paper from the consideration of the jury in determining what the contract was. That such was not the intention of the court is clearly manifest in the concluding paragraph of instruction No. 4 given at the instance of the appellee, in which the court expressly tells the jury that "in determining the contract between the parties you are to take into consideration all the facts and circumstances, including the writing evidencing the offer that has been introduced here in evidence, and read in your presence." The jury were thus expressly authorized to consider the writing in determining what was the contract between the parties.

The record presents no reversible error, and the judgment is therefore affirmed.