Rogers-Pyatt Shellac Company, Respondent, *v.* The Starr Piano Company, Appellant.

First Department, May 15, 1925.

**Sales — action by seller for breach of contract — contract specified deliveries July and August but did not require shipping instructions from buyer — time of delivery was extended to October thirtieth — failure to give shipping instructions not breach — request by buyer to seller to cancel order was not repudiation of contract — tender of goods was not made nor waived — seller cannot recover — accord and satisfaction — acceptance by seller of check sent in full settlement for cancellation of contract is accord and satisfaction.**

In an action by a seller to recover damages for the breach of a contract for the sale of goods in which it appears that the goods were ordered for delivery during July and August, and that through correspondence the date of delivery was extended until October thirtieth, the failure of the buyer to give shipping instructions was not a breach of the contract, for the contract did not require the buyer to give shipping instructions.

A letter written by the buyer to the seller in the course of the correspondence between the parties relating to the contract, in which the buyer asked the seller to cancel the order, did not constitute a repudiation of the contract by the buyer; a repudiation must be unqualified and positive and must contain an absolute refusal to go on with the contract.

The time for delivery having been extended to October thirtieth, and the seller not having made a tender of the goods on that date or prior thereto, and there being no evidence that the buyer waived the necessity for tender, the seller cannot recover for it has failed to perform its contract.

Furthermore, the buyer having sent a check to the seller in full for cancellation of unfilled orders, and that check having been accepted by the seller, an accord and satisfaction is shown, notwithstanding the seller stated that it accepted the check on account.

Appeal by the defendant, The Starr Piano Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 24th day of June, 1924, upon the verdict of a jury rendered by direction of the court after a trial before the court without a jury, pursuant to a stipulation that the court might direct a verdict with the same force and effect as though a jury were present.

*White & Case* [*Walter A. Mulvihill* of counsel], for the appellant.

*Velte & Harwood* [*H. Harvey Harwood* of counsel], for the respondent.

Dowling, J.:

The amended complaint herein alleges in substance that on or about February 20, 1920, plaintiff and defendant entered into a contract in writing wherein the plaintiff agreed to sell and deliver

to the defendant f. o. b. New York 150 bags of free T. N. pure orange gum shellac, each bag containing 164 pounds net weight, for delivery to be in about equal monthly proportions during the months of July and August, 1920, and the defendant agreed to accept the same and pay therefor the sum of $30,012 at the agreed purchase price of one dollar and twenty-two cents ($1.22) per pound, and that the defendant would take the entire quantity not later than August 31, 1920. It is averred that at the city of New York, during the respective months of July and August, 1920, the plaintiff was ready, willing and able to make deliveries of the equal proportionate amounts of said shellac, as called for by the said contract, during the said months, and that on the 31st day of August, 1920, it was ready, willing and able to deliver the full quantity of 150 bags of shellac, as aforesaid; but that prior to the time of the first delivery under the said contract, and on or about the 23d day of July, 1920, the defendant notified the plaintiff to hold up the deliveries of all of the said shellac, as called for in the said contract, until such further time as the defendant should advise the plaintiff to deliver the same.

It is further alleged that within a reasonable time thereafter the defendant failed and refused to advise the plaintiff to deliver said shellac and further failed to give plaintiff necessary shipping instructions; that thereupon and on or about October 8, 1920, plaintiff notified said defendant that it was ready, willing and able to deliver the entire quantity of said shellac, as called for by the said contract, and that unless it heard from the defendant to the contrary, it would ship the entire quantity of said shellac on or about October 30, 1920.

There is then an averment that the plaintiff duly performed all the conditions of said agreement on its part to be performed; that thereafter, and on or about the 26th day of October, 1920, and at various times thereafter, defendant wrongfully repudiated the said contract and notified said plaintiff of its refusal to perform its obligations under the said contract and that it would not take and accept the said shellac, or pay therefor; that plaintiff was at all times ready, willing and able to perform the said agreement on its part to be performed since the month of July, 1920, with respect to selling and delivering said shellac in accordance with the terms of said agreement, and would have sold and delivered said goods to said defendant according to the terms of said agreement, but for defendant's aforesaid cancellation, notification, neglect, refusal and omission to advise plaintiff to make deliveries, to give plaintiff shipping instructions, and to take the shellac on or before August 31, 1920, or within a reasonable time thereafter,

The amended answer first pleads a general denial; and then sets up two separate defenses. The first of these is, an accord and satisfaction by the payment to plaintiff by defendant of the sum of $4,900; the second, that after the making of the agreement alleged in the amended complaint, on or about the 17th day of November, 1920, and before the conditions of said agreement had been performed by the plaintiff and defendant herein, it was mutually agreed by and between the plaintiff and the defendant that the said agreement be waived, abandoned and rescinded and the same was then duly waived, abandoned and rescinded accordingly.

The evidence consisted almost entirely of letters passing between the parties concerning the subject-matter of the suit, and which are vital to its determination. The contract sued upon is known as order No. 9164. It consists of two papers, a " purchase order " signed by defendant in confirmation of a verbal order previously given, and a " sales contract," between the parties, dated February 20, 1920. The latter called for gum shellac as follows:

" Quantity and Description — One hundred fifty (150) Bags Free/Pure T. N. Orange Gum Shellac.

" Weights and Tares — Calcutta Net Invoice Weights.

" Times of Shipment — In about equal monthly proportions:— For delivery during July/August, 1920. Entire quantity to be taken by August 31st, 1920.

" Price — Dollar twenty-two ($1.22) cents per pound.

" Delivery — F. O. B. New York.

" Terms of Payment — Net cash within thirty (30) days or 1% cash discount if paid within ten (10) days after date of invoice."

The sales contract also contained the following:

" ROGERS-PYATT SHELLAC Co.
    " 79–81 Water St.,
        " New York.
                            " Western Branch
                                " 350 N. Clark St.
                        " Chicago, Ill.
                                " Dated, *Feb.* 19, 1920.
" Please ship to — STARR PIANO Co. at Richmond, Ind.
" When — Contract.
" Terms: 30 less 1% 10 days.
                " 150 bags T. N. (Free) at $1.22
                                F. O. B. New York.
        " Delivery C.        July — August,
                                    1920.
" L. R. VAN ALLEN.                    Confirmation."

On July 23, 1920, defendant wrote plaintiff, as follows:

*" July* 23, 1920.

" ROGERS-PYATT SHELLAC Co.,
   " New York, N. Y.:

" GENTLEMEN.— Regarding our order # 9164 wish to say that we have just received 150 bags that you recently shipped from Chicago and because these will run us several weeks we wish you would hold up our order # 9164 until further advised.

    " Yours very truly,
      " THE STARR PIANO COMPANY,
       " By WALTER DUNING,
         " *Purchasing Agent.*"

July twenty-sixth plaintiff wrote defendant:

" We acknowledge receipt of yours of the 23rd instructing us to hold up your order # 9164 until further instructed to ship same. We will comply with your instructions."

October 8, 1920, plaintiff wrote to defendant:

*" October 8th,* 1920.

" THE STARR PIANO COMPANY,
   " Richmond, Ind.:

" GENTLEMEN.— We herewith enclose statement showing your account dated July 8th, amounting to $24,548.67. This account is 90 days old and 60 days overdue. We must kindly ask you to send us your check by return mail.

" Relating to your new contract with us calling for 150 bags of T. N. Shellac, we want to make shipment of this lot of goods because in your letter of July 23rd, you state that you would have enough Shellac to run you for several weeks and for us to hold up your order until further notice, and as per your correspondence and in accordance with same the Shellac that you had must have been used up by this time. So under the circumstances we will get ready these 150 bags and expect to make shipment before October 30th, as we close our fiscal year on that date and we must get this piece of business into this year.

" We would kindly thank you to give our account your prompt attention and also please make arrangements to take in 150 bags as they will undoubtedly reach you sometime during the first 15 or 20 days in November.

    " Yours very truly.
      " ROGERS-PYATT SHELLAC COMPANY,
" GCG: JMC.      GEORGE C. GRUNTHAL."

On October 9, 1920, defendant answered plaintiff, the material part being: " As regards the 150 bags of T. N. Shellac on our

order # 9165, wish to say that we cannot possibly handle this Shellac this month; in fact, we cannot state at this time, just when we will be able to handle it, because we are not consuming nearly as much Shellac as we anticipated consuming at the time this order was placed. Our inability to get additional equipment, and also the time required to break in new help on this kind of work has cut down production way beyond our expectations."

To this plaintiff replied on October sixteenth:

" I am in receipt of a copy of your letter of the 9th, addressed to our New York Office, regarding the postponement of delivery of the 150 bags of T. N. Shellac which we are holding for you.

" We note on account of the slackening of business that you do not require the same. It is perfectly agreeable for us to accommodate you to hold up these 150 bags, say until December. If this will be satisfactory to you, if you will be good enough, write us a letter to this effect that this extension will in no way invalidate the contract either on your or our part. We have been in a position to make this delivery to you as the contract called for, in August, but we thought in giving you the further 30 day extension that you might see your way clear to accept it, but under the circumstances as you explained it, we want to do everything that we can to please, and if this further extension to the end of the year or possibly January, will suit your book any better, we will be pleased to do so at your written request."

In answer to this letter, defendant replied under date of October twenty-sixth:

" Mr. Byrnes' letter of the 16th inst. has been received and contents carefully noted.

" As previously advised, we are not getting out as many records as we anticipated, for several different reasons.

" In the first place, we are having trouble getting the necessary equipment for turning them out and we are also having trouble getting this equipment installed on account of the other work that we are trying to do in the different departments of the entire plant.

" In the second place, to break in new help and to get any kind of production is also no small undertaking. In order to compete with the other manufacturers, it is absolutely necessary that these records be turned out in large quantities and that the number of rejects be reduced to a minimum.

" In the third place, during the summer months the demand for records dropped off a little the same as anything else. While this has not affected our record business as a whole, it has made us

carry a stock of certain numbers that are good sellers, longer than we anticipated.

" Taking all of this into consideration, we believe the thing to do would be for us to send you a settlement in full covering the 150 bags shipped to us some time ago and for you to cancel our order # 9164 in order that we can open up a new negotiation with you as soon as we are in the market.

" Hoping that this proposition will meet with your approval, we remain,

" Yours very truly,<br>
" THE STARR PIANO CO.,<br>
" By WALTER DUNING,<br>
" *Purchasing Agent.*"

This proposition called forth the following response from plaintiff, dated November fourth:

" Referring to your letter of October 26th in reply to my letter to you of the 10th, regret very much that we cannot comply with your request.  In the first place, all Shellac which we sell we cover in the Calcutta market and cannot, under any circumstances, accept cancellations.  The difference between your contract price and the market price makes a difference of approximately $9,800.00. If you don't want to carry this shellac, we will be perfectly willing to cancel same for the difference between your contract price and the actual cost in Calcutta.

" As advised you, we are perfectly willing to carry these goods along until the end of December and unless some mutual and satisfactory understanding is made between ourselves to the contrary, we will ship you the Shellac at the end of December.

" As yet, we have not received settlement of our account, now overdue, which you promised and we would appreciate very much your giving this matter your immediate attention.

" Awaiting your reply, we remain,

" Yours very truly,<br>
" ROGERS-PYATT SHELLAC COMPANY,<br>
" JAMES W. BYRNES,<br>
" *Secretary.*"

This letter was answered on November seventeenth by defendant, as follows:

" Referring to your proposition of Nov. 4th to cancel unfilled orders for $9,800.00:  You will no doubt recollect that some time ago when we had an excess supply of shellac on hand, that you disposed of this for us and could allow us but half of the  difference between the purchase price and the sales price.  It is our belief

that this should work both ways, consequently we are enclosing our check for $4,900 covering settlement in full for cancellation of all unfilled orders."

The inclosed check for $4,900 bore on its face the words: " In full for cancellation of unfilled orders." It was indorsed and deposited by plaintiff, which then sent a letter to defendant under date of November twenty-third, the material part of which is: " We acknowledge receipt of your favor of November 17th enclosing $4,900 which we will apply to the credit of your account. Anything that might have happened some time ago has nothing whatsoever to do with this case and we expect you to kindly make remittance for the balance amounting to $4,900 by prompt return mail unless you desire us to make the cancellation referred to in our letter of November 4th written by our Secretary, Mr. James W. Byrnes."

In a letter from defendant to plaintiff dated November twenty-seventh, referring to the letter of November twenty-third, the former wrote: " Our payment of $4,900.00 was not a payment on account and I hasten to protest against permitting your assistant treasurer treating it as a payment on account."

The learned trial court gave judgment for plaintiff upon the theory that " the defendant breached by not furnishing shipping instructions." But this is erroneous, as no shipping instructions were required to be given by defendant. The contract itself provided that the goods were to be shipped to " Starr Piano Co. at Richmond, Ind.," and all that plaintiff had to do was to put the shellac f. o. b. on cars at New York, before the expiration date of the contract, consigned to defendant at Richmond, Ind., and it would have complied with the terms of the contract. (*British Aluminum Company, Ltd.,* v. *Trefts,* 163 App. Div. 184.)

The amended complaint avers that the defendant on October 26, 1920, wrongfully repudiated the contract and notified the plaintiff of its refusal to perform and to take and accept the shellac and pay for same. The learned trial court must have adopted this same theory of repudiation, as he allowed interest to plaintiff on the damages he awarded to it from October 26, 1920, which he evidently found to be the date of repudiation. But a repudiation of a contract must be unqualified and positive; it must be an express and absolute refusal. (*Ga Nun* v. *Palmer,* 202 N. Y. 483; *Metallograph Corporation* v. *Arma Engineering Company, Inc.,* 205 App. Div. 100.) The letter of October twenty-sixth, relied on by plaintiff and accepted by the learned trial court as a repudiation, complies with none of these tests. It is no more than a proposition from defendant, a request that plaintiff cancel the order. The plaintiff so treated it when it replied: " regret very much that we

cannot comply with your request." It is not a repudiation of the contract.

Furthermore, plaintiff never made a tender of the shellac to defendant before October thirtieth, the date to which it volunteered to defer shipment, nor was any evidence offered to that effect. On the contrary, the witness Byrnes, secretary and managing director of plaintiff, testified that " If my memory serves me right they [defendant] wrote a letter wherein they said they could not use the shellac, they did not want it, they wanted us to cancel it, and then we immediately, naturally, disposed of it. Q. Do you recall when you disposed of it, about when? A. About, I think it was about the time when we had this correspondence. Q. You disposed of it some time in the early part of November, 1920? A. Yes, the latter part of October or the first part of November."

No tender of the goods having been made to defendant, and there being neither pleading nor proof of any waiver of such tender by defendant, nor of facts excusing the same, plaintiff cannot recover. (*British Aluminum Company, Ltd.,* v. *Trefts, supra; Becker* v. *Seggie,* 139 App. Div. 463.)

Furthermore, the acceptance of defendant's check for $4,900, under the conditions attending its tender, and with the words upon its face " In full for cancellation of unfilled orders," was an accord and satisfaction between the parties and operated as a rescission of the contract by consent.

Plaintiff contends that the defendant repudiated the contract on October 26, 1920, before the date of performance, which according to the plaintiff was October thirtieth. None of the shellac under the contract was ever delivered to the defendant. The contract was wholly executory.

The defendant paid the $4,900 check for the specific purpose of effecting a cancellation of the existent contract. Plaintiff on November fourth had written, before accepting and depositing the check, suggesting that it would cancel the contract for the difference between the contract price and the actual cost in Calcutta. There was no proof of what that difference was, or whether it was more or less than $4,900, although plaintiff's letter claimed it was $9,800. If plaintiff did not desire to accept defendant's offer of $4,900 for a cancellation of the contract, it was its duty to at once return the check. It could not accept it, disregard the terms upon which it was offered, and still seek to enforce the contract.

In *McIntosh* v. *Miner* (37 App. Div. 483) an action was brought by the plaintiff against the defendant to recover damages for breach of contract. The contract was dated February 1, 1896, by which Miner and Brooks, the defendants, agreed to assume the manage-

ment of the plaintiff as a star in a theatrical company for three seasons, the plaintiff to be paid $100 a week and certain other profits. The first season under the agreement was to commence some time in the month of November, and the two ensuing seasons some time in the month of September. The evidence tended to show that before the time of performance, the plaintiff, in an interview with one of the defendants, proposed and agreed to cancel the existing contract upon the payment to him of $400. A check was subsequently sent to plaintiff for that amount. The check was returned and the plaintiff did not play under the defendants' management. It was held that the agreement resulting from the interview in October must be construed as a new contract which was based upon a sufficient consideration and capable of enforcement, by which the former contract between the parties was abrogated. The court (at p. 489) said: " The question presented is whether this was a valid rescission of the contract. The rule is stated in the American and English Encyclopædia of Law (Vol. 3 [1st ed.], p. 889) as follows: ' An executory contract — that is, one which has not been acted upon — may be discharged by the simple agreement of the parties that it shall no longer bind either of them. The consideration for the promise of each party is the renunciation by the other of his rights under the contract. Each abandons his rights in consideration that the other will do the like. It must be shown that the agreement was mutual, and not a mere waiver of his rights by one party.' We have in this case evidence tending to show that this executory contract, before the time for its performance and at a time when the defendants could have performed it, was rescinded by an agreement between the parties made at the request of the plaintiff that the contract be canceled, and that the defendants agreed to pay to the plaintiff the sum of $400. At the time this new agreement was made there was no indebtedness by the defendants to the plaintiff. The original contract was yet to be performed, the time of performance not having arrived. If such a contract was actually made by which the defendants became indebted to the plaintiff in the sum of $400, I can see no reason why it would not be a rescission of the prior contract."

The judgment appealed from should, therefore, be reversed, with costs to appellant, and judgment directed in favor of defendant, dismissing the complaint upon the merits, with costs.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.