SYDEMAN BROTHERS, INC., *v.* WHITLOW.

4-2852

Opinion delivered February 6, 1933.

938

I. J. *Friedman* and *Cravens & Cravens,* for appellant.
*Hill, Fitzhugh & Brizzolara,* for appellee.

MEHAFFY, J.   On April 30, 1930, the appellee and appellant entered into a written agreement whereby the appellee let, rented and leased to the appellant certain property in the city of Fort Smith, Arkansas, for the term of five years, commencing on June 1, 1930, at a yearly rental of $2,400, payable monthly in advance.

One clause in the lease reads as follows:

"That said lessee shall keep the premises in good repair, reasonable use, wear and tear and damage by the elements excepted, except that the lessee shall not be required to make repairs to the roof or structural repairs and the lessor agrees to keep the roof and the structural parts of the building in good repair."

A later clause in said lease reads as follows:

"In case the premises are destroyed by fire, or so damaged by fire or any unavoidable casualty as to make

them uninhabitable or unfit for use and occupation, the lessor agrees to repair such damage as promptly as possible, and the rent shall be abated until the completion of such repairs. In the event that the said premises are completely destroyed and the lessor decides not to rebuild, then this lease shall terminate and come to an end.''

The above are the only clauses in the lease about which there is any controversy.

The appellant conducted a retail clothing business in said building, and the building was damaged by fire on September 10, 1931. Immediately after the fire, the lessor employed the contractors to restore said building. The contractors made a survey of the general damage to the building, and made notes of the damages, prepared an estimate of loss and damage caused by the fire, water and smoke. The contractors were ready to go to work the day after the fire.

The manager for the appellant, Mr. Frazier, told the contractor that Mr. Schachter would be there in a few days; that he was the road manager, and that the goods could not be removed until Mr. Schachter came. When Mr. Schachter came, he insisted that no repairs be made until they got their goods out of the building. He asked the contractor not to do anything until after everything had been moved out.

The insurance adjuster undertook to adjust the loss. He directed the contractor to make separate estimates for the papering, painting and all fixtures, and all interior work; that the appellant had that covered by insurance, and would collect for it, and he should make separate estimates, which he did, and the appellant collected for the damage to these items.

The appellant concedes that, if the appellant was to make repairs, its failure to do so and to continue to pay rent would constitute a breach of the contract, and justify the judgment against it. But if it was the duty of the appellee to make these repairs, then her failure to do so constituted a breach of the contract.

The question for our determination therefore is, whether the lessor or lessee was to make repairs on the items upon which appellant carried insurance.

The two clauses of the contract or lease must be construed together. There is no conflict between the two clauses; and, if we had nothing but the two clauses and had to determine from them alone, the appellee would be required under them to repair all the damage done by the fire.

A contract of lease is construed like any other contract, and the rule is, in the interpretation of contracts, to ascertain the intention of the parties, and give effect to that intention, where this can be done consistently with legal principles. 6 R. C. L. 835, 13 C. J. 520; *Coca-Cola Bottling Co. of Ark.* v. *Coca-Cola Bottling Co.,* 183 Ark. 288, 35 S. W. (2d) 579.

In ascertaining the intention of the parties, this court, in the last case cited, quoted with approval the following:

"It is a well-established principle of law that, in the interpretation or construction of contracts, the construction the parties themselves have placed on the contract is entitled to great weight and will generally be adopted by the courts in giving effect to its provisions."

It is to be assumed that parties to a contract know best what was meant by its terms, and are the least liable to be mistaken about its intentions. *Temple Cotton Oil Co.* v. *Southern Cotton Oil Co.,* 176 Ark. 601, 3 S. W. (2d) 673; *Gauss Sons* v. *Orr & Lindsey,* 46 Ark. 129; *Keopple* v. *Nat. Wagonstock Co.,* 104 Ark. 466, 149 S. W. 75; *Craig* v. *Golden Rule Life Insurance Co.,* 184 Ark. 48, 41 S. W. (2d) 769.

Courts may acquaint themselves with persons and circumstances that are subjects of the statement in a written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and judge of the meaning of the words and clauses used by the parties, and the conduct of the parties should

be considered in determining what they meant by the contract. 13 C. J. 546.

The appellant secured a policy of insurance protecting it from loss or damage by fire, on certain items of the interior. It suggested that separate estimates be made, one for the landlord, including the items that she was to repair, and one for the tenant, on the items insured, for its benefit and in its name.

We therefore think that the parties themselves, and especially the appellant, understood the contract to mean, and construed it to mean, that it was to repair the damage to these items. We are therefore of opinion that, when the two clauses of the contract are considered together, and the conduct of the parties and all the attendant circumstances are considered, it was the intention of the parties that the appellant should repair the items insured in its name for its benefit.

It also appears from the evidence that the landlord would have repaired the building immediately, but for the objection of the appellant. The contractor offered to go to work at once, and to give the appellant a bond to protect its goods and its interests while repairs were being made, but the appellant declined to permit repairs to be made until it had disposed of its goods.

About the time the repairs were completed, the appellant, after disposing of all of its property in Arkansas, and after requiring the appellee to spend considerable money purchasing linoleum for the floor, wrote to the Secretary of State that it had disposed of its last store in Arkansas, and wished to retire from business in the State of Arkansas. When this suit was brought, it filed a petition in this court for a writ of prohibition, alleging that about four months before the appellee instituted her suit, it, a foreign corporation, had withdrawn by discontinuing its business in the State of Arkansas, and by notifying the Secretary of State of such cessation of business, and its retirement from the State, alleging that, by reason of these facts the chancery court acquired no jurisdiction by service of summons upon the Secretary of State.

We do not think that the contract as construed by the parties, shows that the repairs to the interior were to be made by the appellee, but we think appellant is estopped by its conduct from claiming that the appellee breached the contract.

We think it evident from the proof that the appellant did not intend to occupy the building, nor did it intend to sublet it.

Whether the appellant had breached the contract, and whether, under the contract, the appellant was to make the interior repairs, were questions of fact, and the chancellor's finding will not be disturbed unless we can say it is against the preponderance of the evidence; and, in determining these questions the chancellor had a right, not only to consider the testimony of the witnesses, but the conduct of the parties and all the attendant circumstances.

The conclusion we have reached as to the interpretation of the lease makes it unnecessary to decide the other questions discussed by counsel.

We find no error, and the decree is affirmed.