PICTORIAL PAPER PACKAGE CORPORATION *v.* SWAMP & DIXIE LABORATORIES, INC.

4-5300                                              122 S. W. 2d 529

Opinion delivered December 12, 1938.

*I. J. Friedman* and *Geo. W. Dodd,* for appellant.
*Warner & Warner,* for appellee.

HOLT, J. This appeal comes from a decision of the Sebastian circuit court, sitting as a jury, in which there was a finding and judgment for defendant, appellee here.

The sole question for our consideration, and one on which this case turns, is the construction of a contract, which is in writing, evidenced by letters and a telegram.

The facts out of which the contract grew are sub-. stantially as follows:

On June 15, 1934, appellee wrote appellant in part as follows: "Please quote us prices on 50 M and 100 M lots, on the 100 M with the agreement that we take this out in two shipments. The first shipment at once and the second in six months. We must have the first shipment of merchandise in here not later than July 20th, so please give us these prices as soon as possible." On June 25, 1934, appellee answered in part as follows: "Just in receipt of letter of 22nd, in which you quoted us prices on Swamp Chill and Fever Tonic Cartons. We note that you only gave your price on 50 M. We asked you to give your price on 50 M and 100 M lots, with the understanding that we can take 50 M out at once and 50 M in six months. We also asked you what delivery you could make on these cartons. We would like part of the cartons not later than the middle of July." Again on June 28, 1934, appellant wrote defendant in part as follows: "We can execute delivery on an order of this nature within about two weeks after receipt of your order. If you desire these cartons by the middle of July we can easily have them for you by that time if you will send us your order along the latter part of this month. In these lots you will be permitted to contract, all to be taken out within six months' time." On July 2, following, appellee wired appellant as follows: "Enter order One Hundred Thousand Chill Tonic cartons, Fifty Thousand to be shipped at once." Following receipt of this telegram on July 2nd, appellant prepared the "contract order" covering the merchandise as follows: "Charge to Swamp & Dixie Laboratories, Inc., 301-11 Rogers Ave., Fort Smith, Arkansas. Contract Order: Ship 50 M by July 15, balance as ordered within six months. 100 M PTL 'Swamp Chill and Fever Tonic' cartons @ $3.35 M, $335." Appellant writes appellee again on July 5, 1934, in part as follows: "We are inclosing our acknowledgment of your valued order recently favored us for 100 M printed 'Swamp Chill and Fever Tonic' cartons, the cost of which will be in the neighborhood of $335. When the manufacture of this order has been completed, the mer-

chandise is to be placed in storage—50 M to be shipped by July 15th, and the balance to be consummated within six months from date of first shipment. Immediately let us hear from you if the order as written up and acknowledged has not been done in accordance with your instructions."

The first shipment of 50 M cartons made within the time specified, July 15, 1934, amounted to $168.84, which was paid by appellee. The balance of the cartons were never shipped and nothing said or done by either party about them until January 20, 1936, more than 18 months after the sale was made, when appellant wrote appellee as follows: "In checking our contract and split shipment orders, we find that we still have on hand 52,650 'Swamp Chill and Fever Tonic' cartons on your old contract order dated July 2, 1934. This order was accepted on the basis of making complete delivery within six months after date of first shipment, which was made on July 17, 1934; since that date we had received no release orders from you. In as much as this contract should have been completed a long time ago, we are wondering if you will not be good enough to allow us to make shipment of the above mentioned cartons at this time. . . ."

On January 22, 1936, appellee replied to the above letter in part as follows: "We did not know that we had any of these cartons on hand. We placed this order with you on July 2, 1934, and asked you to make shipment of 50 M cartons at once, and that we must have the cartons not later than July 16th. The balance of the order was to be taken out in six months' time. As the cartons were not shipped to us on the specified date, we thought that we had received all of our cartons. . . . We gave you specific shipping instructions when we sent you our order on July 2, 1934, so we do not think it is any fault of ours that you still have the cartons on hand. The balance of the cartons should have been shipped the first part of 1935."

Again on January 25, 1936, appellant wrote appellee in part as follows: "We are replying to your letter of January 22nd with reference to the 'Swamp Chill and Fever Tonic' cartons we have on hand on your

contract dated July 2, 1934. This order was entered and accepted on the basis of shipping 50 M cartons by July 15, 1934, and the balance as ordered out, all within six months from the date of the first shipment." Additional subsequent correspondence passed between the parties which is not necessary to repeat here.

The court below made the following findings of fact and declarations of law: "1. The court finds that under the contract between the parties the plaintiff agreed to sell and deliver to defendant at Fort Smith, Arkansas, 100 M cartons, at $3.35 per M. That 50 M were to be shipped by plaintiff by July 15, 1934, and the balance within six months. 2. That the first shipment was made by plaintiff to the defendant at Fort Smith, Arkansas, as specified in said contract, but that the plaintiff failed to ship the balance of the cartons within the time specified and made no tender or offer to ship said cartons until January 20, 1936, on which date plaintiff wrote defendant asking it to consent to shipment being made at that time, and that defendant refused to do so. Under the facts the court declares that the plaintiff is not entitled to recover herein and that the complaint should be dismissed with costs in favor of the defendant." Since the contract is evidenced by writings, it was the duty of the trial court to construe it, declare its terms and the obligations of the parties under it. *United States Fidelity & Guaranty Co.* v. *Sellars,* 160 Ark. 599, 255 S. W. 26.

It is undisputed that 100 M cartons were ordered by appellee, that 50 M were shipped according to contract, that appellee never at any time gave shipping instructions for the delivery of the remaining 50 M cartons, nor was any demand made by appellant upon appellee to take them out until in January, 1936. Was it the duty of appellee, under the terms of the contract, to give appellant instructions for the shipment of the remaining 50 M cartons? We hold that it was not necessary for appellee to do so and that in the absence of directions from appellee to appellant to ship out the remaining cartons within the six months' period, it was the duty of appellant to ship the goods within that period, if appellee is to be bound by the contract.

Appellant in its letter of January 25, 1936, placed the following interpretation upon the contract: "This order was entered and accepted on the basis of shipping 50 M cartons by July 15, 1934, and the balance as ordered out, all within six months from the date of the first shipment." In the case of *Sydeman Bros., Inc.*, v. *Whitlow*, 186 Ark. 937, 56 S. W. 2d 1020, the court said: "It is a well established principle of law that, in the interpretation or construction of contracts, the construction the parties themselves have placed on the contract is entitled to great weight, and will generally be adopted by the courts in giving effect to its provisions. It is to be assumed that the parties to the contract knew best what was meant by its terms, and are the least liable to be mistaken about its intentions."

The rule is well settled that where the contract provides that the goods are to be shipped within a certain period, the time of shipment is material and it is not a compliance with the contract if the goods are shipped before or after the time specified. The general rule seems to be as stated in 55 C. J., p. 341, as follows: "Where the contract provides that the goods are to be shipped within a certain period, the time of shipment is usually regarded as material, and it is not a compliance with the contract if the goods are shipped before or after the time specified, unless the terms of the contract and the surrounding circumstances known to the parties show a different intention."

Since the contract provides that appellant must ship 50 M by July 15th and the balance as ordered out within six months, appellant was required to ship the balance of the cartons, 50 M, within six months after July 15th, but gave appellee the option to order the cartons shipped at any time within said period of six months if desired. The rule applicable is stated in 55 C. J., p. 349, as follows: "If delivery is to be made on or before a certain date at the option of the buyer, the seller has until such last date to make delivery, in the absence of any demand by the buyer, and the failure of the buyer to exercise his option is equivalent to demand for delivery on the last date."

Again the rule is stated in 23 R. C. L., p. 1364, as follows: "But where the contract provided for delivery at the buyer's option by giving a certain notice, at any time during a certain month, it has been held that the giving of notice by the buyer was not a condition precedent to the attachment of a duty on the seller's part to deliver, and that, if no notice was given in the exercise of the option for an earlier delivery, it was the duty of the seller to make delivery on the last day of the month."

In *Rogers-Pyatt Co.* v. *Starr Piano Co.,* 212 App. Div. 792, 209 N. Y. S. 733, in reversing the case on appeal and rendering judgment for the buyer, the court said: "The learned trial court gave judgment for the plaintiff upon the theory that 'the defendant breached by not furnishing shipping instructions.' But this is erroneous, as no shipping instructions were required to be given by defendant. The contract itself provided that the goods were to be shipped to 'Starr Piano Co. at Richmond, Indiana,' and all that plaintiff had to do was to put the shellac f.o.b. on cars at New York, before the expiration date of the contract, consigned to defendant at Richmond, Indiana, and it would have complied with the terms of the contract. *British Aluminum Company, Ltd.* v. *Trefts,* 163 App. Div. 184, 148 N. Y. S. 144."

We think that the case of *British Aluminum Co., Ltd.* v. *Trefts, supra,* is also in point, in which, among other things, the court said: "It is contended on the part of the respondent that the plaintiff was under no obligation to deliver or to tender delivery until the defendant specified a time for delivery of the remaining 13 tons of aluminum, which concededly he never did. The parties did not undertake that the vendor need not ship the goods until it received shipping directions from the vendee. The provisions with respect to shipments earlier than the final date were for the benefit of the vendee, and he was required, not to give shipping instructions essential to enable the vendor to make a delivery, but to specify dates for delivery in so far as he might desire a delivery before the 31st day of December, 1911. The vendor had the

right, and I think that it was its duty, if it intended to hold defendant, to deliver or tender delivery of the remaining 13 tons of aluminum on the 31st day of December, 1911, for the legal effect of the contract was to call for delivery thereof on that day. The vendor needed no shipping instructions to enable it to deliver the aluminum, which was to be consigned to the defendant at Buffalo, and to be delivered f.o.b. at the city of New York; and if it did, it should have asked for them if it desired to perform and to put the vendee in default. The contract merely gave the vendee the right to require delivery of part or all the aluminum prior to the final date of delivery. In so far as delivery was not required to be made before that date, the vendor, if it desired the benefits of its contract, was at liberty, without awaiting a request from the vendee, to deliver the aluminum f.o.b. at New York City, consigned to the vendee at Buffalo, and the failure of the vendee to demand delivery did not, in my opinion, excuse the vendor from so delivering or tendering delivery of the remaining 13 tons.'' We feel that it is unnecessary to cite additional authority.

We hold that the contract provided that shipment should be made to appellee within six months from July 15, 1934, and that it gave it the option to order the balance of the cartons prior to the expiration of the six months' period and that under its terms it was not necessary for appellee to give shipping instructions to appellant to enable appellant to make the shipment, but that appellee did have the option to specify dates if it desired delivery before the expiration of the six months' period. Under the contract appellant did not need shipping instructions to enable it to deliver the cartons.

On the whole case, we conclude that the findings and judgment of the trial court should not be disturbed, and we accordingly affirm.