R. R. COTTEN v. J. M. MOSELEY ET AL.

(Filed 3 April, 1912.)

**Estates—Husband and Wife—Limitations Over to Heirs of Wife— Rule in Shelley's Case—Deeds and Conveyances.**

An estate to a husband and wife, with limitation over to the heirs of the latter, conveys the fee simple to the wife under the rule in *Shelley's case*, subject to the life estate of the husband; and a deed made by both the husband and wife of all of their estate in the lands conveys the fee simple. The rule in *Shelley's case* discussed by WALKER, J.

APPEAL from *Whedbee, J.,* at December Term, 1911, of PITT.

This case was heard below upon the following admitted facts: On 13 September, 1871, William Gardner, being then the owner in fee of the tract of land in controversy, containing 140 acres, conveyed the same by deed "to Henry C. Gardner and his wife, Martha Jane Gardner, during their natural lives, afterwards to Martha Jane's heirs forever." The said grantees entered into possession of the land on that day, and continued in the possession until 2 January, 1886, when they conveyed the land in fee, by their deed duly executed, to the plaintiff, R. R. Cotten, and he contracted to sell and convey the same in fee by deed, good and sufficient for the purpose, to the defendants, J. M. Moseley and W. B. Wooten. Plaintiff tendered a deed to them for the premises, and they declined to accept it and pay the purchase money, because the title is defective, as by the terms of

159—1

the deed of William Gardner to Henry C. and his wife, Martha Jane, they acquired only a life estate, with remainder to the heirs of Martha Jane, who, it is alleged, take by purchase and not by descent, and that the said heirs now claim the land accordingly, subject to the life estate of Henry C. Gardner, who is now living, his wife, the said Martha Jane, being dead. The heirs of Martha Jane Gardner are defendants in the case.

The court held, and so adjudged, that the deed of William Gardner to Martha Jane Gardner did not convey the fee, but only a life estate, and, therefore, the plaihtiff's deed will not convey a fee-simple estate to Moseley and Wooten. Plaintiff appealed.

*F. G. James & Son and Aycock & Winston for plaintiff.*
*W. A. Finch and C. C. Pierce for defendant.*

WALKER, J., after stating the case: The question in the case is, whether the limitation of the estate to husband and wife for their natural lives, afterwards to the heirs of the wife forever, is sufficient to pass the fee under the rule in *Shelley's case.* The principle embodied in this rule, which, perhaps, was first formally and authoritatively announced by all the judges during the reign of Elizabeth, in the case from which it takes its name (1 Coke, 219), was of far more remote origin, and for many years had been called "an ancient dogma of the common law." The principal and most forceful reasons advanced for adopting the rule were to prevent the abeyance or suspension of the inheritance, and to facilitate the alienation of land, throwing it into the track of commerce one generation sooner, by vesting the inheritance in the ancestor, than if he continued tenant for life and the heir was declared a purchaser. "Therefore," said *Justice Blackstone,* "where an estate was limited to the ancestor for life, and afterwards (mediately or immediately) to his heirs, who are uncertain till the time of his death, the law considered the ancestor as the first principal of the donor's bounty; and therefore permitted him (who, as it is said, Co. Litt., 22, beareth in his body all his heirs, and who had the only visible and notorious freehold in the land) to sell it, devise it where the custom would permit, or charge it with

his debts and encumbrances. And however narrow and illiberal the original establishment of this rule, or the adhering to it in later times, may have been represented in argument, I own myself of opinion that those constructions of law which tend to facilitate the sale and circulation of property in a free and commercial country, and make it more liable to the debts of the visible owner, who derives a greater credit from that ownership—such constructions, I say, are founded upon principles of public policy altogether as open and as enlarged as those which favor the accumulation of estates in private families by fettering inheritances till the full age of posterity now unborn, and which may not be born for half a century." The rule has also been fiercely assailed by some and mildly criticised by others, as being at war with our free institutions and policy, and as founded upon subtle and artificial reasons and extremely technical considerations. Whether it is an arbitrary rule which is calculated to defeat rather than to execute the intention of the grantor, we are not at liberty to inquire, as it has been firmly established in our jurisprudence as a rule of law, which we must enforce whenever applicable.

The question before us is as to the legal effect of the deed of William Gardner to Henry C. and his wife, Martha Jane Gardner. Did it convey the fee to Martha, under the rule in *Shelley's case?* We are of the opinion that it did. The defendants contend that the subsequent limitation must be to the heirs of the person who takes the particular estate—that is, in this case, the second limitation should have been to the heirs of both husband and wife, as they were seized of the entirety and did not take by moities; but such is not the true operation of the rule. If the limitation had been to the wife for life, remainder to the heirs of the husband and wife, the freehold being in the wife alone, the limitation over would be a contingent remainder, and their heirs would take as purchasers, because the heirs of the husband would not necessarily be the heirs of the wife. 2 Washburn on Real Property (5 Ed.), p. 649; *Robinson v. Wharey,* 3 Wilson, 125. As Fearne (p. 38) says: "Every person may so far be supposed to carry his own heirs in himself during his life as that a limitation to

them where he takes a preceding freehold may vest in himself; yet no person can be supposed to include in himself the heirs of himself and of somebody else." Coke (sec. 26) refers to this passage from Littleton: "If tenements be given to a man and to his wife, and to the heires of the bodie of the man, in this case the husband hath an estate in general taile, and the wife but an estate for terme of life. If lands be given to the husband and wife, and to the heires of the husband which he shall beget on the body of his wife, in this case the husband hath an estate in special taile, and the wife but an estate for life. If the gift be made to the husband and to his wife, and to the heires of the body of the wife by the husband begotten, there the wife hath an estate in special taile, and the husband but for terme of life. But if lands be given to the husband and the wife, and to the heires which the husband shall beget on the body of the wife, in this case both of them have an estate taile, because this word (heires) is not limited to the one more than to the other." Commenting upon the passage, Coke says: "This word (heires) is *nomen operativum.* To which of the donees it is limited, it createth the estate taile; but if it incline no more to the one than to the other, then both doe take, as here Littleton putteth the case." In pleading seizin of such an estate (when the inheritance inclines to the wife), "it shall be alleged that they were seized together and to the heirs of the body of the wife in her right; and not that they were seized of the freehold or fee tail." Coke, sec. 28 and note 1. And Fearne (p. 39) tells us that "the same distinction was relied on in *Repps v. Bonham,* Yelverton, 131": "Where, upon a feoffment to the use of R and his wife for their lives, remainder to the use of the first, second, and third son of the body of the wife, and afterwards to the heirs of the body of the wife by R begotten, it was held, that the inheritance was only in the wife; because the word heirs, which made the inheritance, was annexed only to the body of the wife; but that if it had been to the heirs which the husband should beget on the body of the wife, it would have been an estate tail in them both." In the official report of this case it is stated to have been held that R had an estate for life and his wife an estate tail, and "this was

adjudged by all of the Court, without any scruple." In a note to that case it is said that to whichever body the word *heirs* inclines by the limitation, it creates a descendible estate in such person; but if it be not more particularly limited to the body of one than the other, but inclines to each alike, then it creates a descendible estate in each of them. 3 Bac. Abr. (Bouvier's Ed.), p. 439. It is not necessary that the limitation to the heirs should be enjoyed immediately upon the death of the first taker. Nor will it have any effect to exclude the rule that the remainder cannot by possibility vest as a remainder in the lifetime of the ancestor, as where the limitation was to A and B and the heirs of him who should die first. So if the remainder be limited on a contingency which does not happen in the ancestor's lifetime, nevertheless the heirs will take by descent. The mere circumstance that the remainder was contingent does not prevent the operation of the rule the moment the remainder vests. Thus, an estate limited to A for life, and if A survives B, then to his heirs, would be a contingent remainder in A, depending upon his surviving B. If he does, his estate becomes at once vested, and his term for life merges in the inheritance. (*Starnes v. Hill,* 112 N. C., 1.) As a consequence from the foregoing principles, whoever has a freehold, which, by the terms of the limitation, is to go to his heirs, may alien the estate, subject only to such limitations as may have been created between his freehold and the inheritance limited to his heirs. Thus, where the limitation is to A for life, and after his death to B for life, and after his decease to the heirs of A, A practically has two estates—one in possession, the other in remainder; the first for life, the other in fee, divided by the estate to B. And if B were to die in the life of A, the latter's estate would merge, and he would at once become the unlimited tenant in fee of the estate. 2 Washburn R. P. (5 Ed.), p. 650. There are many cases in the books where it has been held that if an estate is limited to several persons for or during their lives, with remainder to the heirs of one of them, that one will take a fee, subject, of course, to the life estates of the others. See exhaustive note on the rule in *Shelley's case* to *Price v. Griffin,* 150 N. C., 523, and other cases in 29 L. R. A. (N. S.), 935.

*Bailes v. Davis,* 241 Ill., 536. The rule is said to "act upon the words of inheritance, and does not affect the rules for determining the quantity of estate conveyed, or the number and connection of the owners of the land."

The very question presented in this case has been decided in other jurisdictions. In *Hess v. Lakin,* 7 Ohio S. and C. P. Dec., 300, where the grant was to a man and a woman during their natural lives, then to the woman's heirs at law, it was held that the woman took a fee in the whole tract of land, expectant as to one moiety, or subject to that life estate, and the Court said: "It must be conceded the rule applies only when the subsequent limitation is to the heirs of him to whom the preceding estate was given, but nowhere has it been affirmed in express terms, by either a court or a text-writer, that the ancestor must take the whole of the preceding estate, or, if there is more than one preceding estate, he must have all of them. There is just as much reason for requiring him to have all of them when several antecede the remainder, as there is for requiring him to have the entire preceding estate when only one precedes the remainder."

The rule is learnedly discussed in that case, and was held to apply to a limitation similar to the one in the William Gardner deed. The two cases are strikingly alike in their facts, for in *Hess v. Lakin* it was decided that the wife acquired a fee simple, subject to her husband's life estate, and having purchased that estate, she held the entire fee, which was, therefore, conveyed by her subsequent deed. The following authorities are cited in support of the decision: 1 Preston on Estates, 337-340; Fearne on Remainders, 36; *Fuller v. Chamier,* L. R., 2 Eq., 682; *Bullard v. Goffe,* 20 Pick., 252. The Court gives the following extract from Wooddeson: "If the particular estate be to A and B, jointly for their lives, remainder to the heirs of the body of B, this will be an estate tail in B, executed in B, so as to make the inheritance not grantable distinct from the particular estate of freehold, by way of remainder, but, on the other hand, not to sever the jointure, or entitle the wife of B to dower." Preston on Estates, 338. This corresponds with what is said in Fearne on Remainders, at p. 36. The same was

decided in` Kepler v. Reeves,` 7 Ohio Dec., Reprint, 34, in
which there was a grant to husband and wife for their lives,
remainder to the heirs of the wife. *Judge Avery,* deliv-
ering the opinion of the Court, said: "Where either, husband
or wife singly, has an estate for life, and the subsequent limita-
tion is to the heirs of the two, it is widely different from where
the life estate is in the two, with a limitation singly to the
heirs of one. No person can be supposed to include in himself
the heirs of himself and some other person, and yet may so far
be supposed to carry his own heirs in himself during life that a
limitation to them, where he takes a preceding freehold, will
vest in him. That the preceding freehold may be taken jointly
by himself with others seems, according to the authorities, not
to make a difference. It is laid down that the subsequent lim-
itation to the heirs must be confined to those of the ancestor
who takes a particular estate, but at the same time that if the
heirs be confined to those of the persons taking a particular
estate, it matters not whether the estates of the ancestors be sev-
eral (so they all take) or joint, nor whether the remainder over
be to the heirs of all or only of some of such ancestors. Watkins
on Descents, p. 162; Fearne, 36; 1 Prest. Est., 315-320; 2 Prest.
Est., 442; 9 Mod., 292; 2 Rep., 61. In *Fuller·v. Chamier,* L.
R., 2 Eq., 682, it was held that an estate to A, B, and C in equal
shares during life, and after their decease unto the next lawful
heir of A forever, was a limitation within the rule of *Shelley's
case* and that A took an estate in fee simple. In *Bullard v.
Goffe,* 20 Pick., 252, upon a conveyance to the use of husband
and wife for their lives, and the life of the survivor, and after
their decease to the use of H for life, and after the decease of H
to the use of the heirs of the wife forever, it was held that a fee
simple in the land vested in the wife, in the case of her surviv-
ing her husband and H. This last case furnishes a precedent
precisely in point, and will be followed." So in *Patterson v.
Patterson,* Dayt., 28 (cited in Laning Ohio Cyc. Dig., 5865),
it was held that, "Where title to lands is derived by deed limit-
ing it to a person and her husband during their lives, and to
the heirs of her body forever, the grantees in the deed take an
estate for their lives under the rule, and the children take by

descent, and not by purchase, and the husband is entitled to the estate by curtesy, and there can be no partition."

In *Griffiths v. Evan*, 5 Beav., 241, a devise of a freehold estate to testator's daughter for life and the life of her husband, and after their deaths to the use of the lawful issue of the body of the wife forever, the testator empowering and authorizing the daughter, for want of such issue, to settle and dispose of the estate as she should think fit by will, was held to create an estate tail in the daughter, with a power of appointment. Under a deed by which lands were conveyed to a man and his wife during the term of their natural lives, and to the heirs of the wife and her assigns forever, to have and to hold unto the said husband and wife during the term of their natural lives, and to the heirs of the wife and their assigns forever, it was held that the wife took a fee simple. *Badgley v. Hanford*, 12 N. J. L. J., 75. The Court said (by *Van Syckle, J.*) that where the particular estate is granted to two, with a limitation to the heirs or heirs of the body of one of them, the inheritance is executed in the person to whose heirs it is limited. And it was further said: "This case, I think, is not excluded from the rule in *Shelley's case* by the fact that the husband was entitled to the use of the property during the joint lives of himself and wife. *Washburne v. Burns*, 34 N. J. L. (5 Vr.), 18; *Bolles v. Trust Co.*, 12 C. E. Gr., 308. That is an incident of the marriage relation necessarily flowing from the unity of husband and wife. Each was, in law, however, seized of the entirety, and all the conditions were fulfilled which are necessary to bring it within the rule in *Shelley's case*. The particular estate and the remainder in her were created by the conveyance from Simpson." It is the form of the second limitation which determines the application of the rule, and it is so held in *Crockett v. Robinson*, 46 N. H., 461. Under the rule in *Shelley's case*, the Court said: "It is not material to inquire what the intention of the testator was as to the quantity of estate that should vest in the first taker. If the limitation were to A for life, remainder to his heirs in fee simple, without other qualifying words, the actual intention would undoubtedly be that A should take an estate for life only and have no power

to dispose of the remainder in fee, and negative words saying that A should take for life only would add nothing to the clearness of the first words. The material inquiry is, What is taken under the second devise? If those who take under the second devise take the same estate that they would take as his heirs or as heirs of his body, the rule applies. However clear the intention may be to create an estate in A for life, remainder to his heirs, so that the estate shall go to those persons who are the heirs of A, and descend to his heritable blood in line of descent, the policy of the law, which established the rule in *Shelley's case,* did not allow such a limitation. By that rule no person was permitted to raise in another an estate of inheritance, and at the same time make the heirs of that person purchasers. 6 Cruise, 325, 326, 328; Fearne on Con. Rem., 196; Hargrave's Tracts, 551; 4 Kent, 208, 214; *Denn v. Puckey,* 5 T. R., 299, 303; *Richardson v. Wheatland,* 7 Met., 172." This passage was cited with approval in *Nichols v. Gladden,* 117 N. C., 502, in which the Court said that, "The material inquiry is, What is taken under the second devise?"

As H. C. Gardner survived his wife, the limitation is the same, in legal effect, as if it had been to his wife for life, then to him for life, and ultimately to the heirs of his wife. She acquired a fee simple, subject to his life estate, and as he joined with her in the deed to R. R. Cotten, the entire estate in fee passed to the latter. Wooddeson, 205. The judgment of the court was, therefore, erroneous.

Reversed.