HARMON *v.* THOMPSON.

5-275                                                        263 S. W. 2d 903

Opinion delivered January 25, 1954.

*S. M. Bone,* for appellant.

*W. J. Arnold,* for appellee.

GEORGE ROSE SMITH, J.   This controversy centers upon a deed executed in 1938 to Dave Harmon and his wife Gertie.   Dave died in 1945 and Gertie died in 1951. This suit to recover the forty acres in question was then brought by the appellant, who is Dave Harmon's son by an earlier marriage and is his sole heir.   The appellant contends that the 1938 deed vested the fee in Dave Harmon, subject to a joint life estate in Dave and Gertie. The appellees are Gertie's three sisters, her only heirs.   In the court below they asked that the deed be reformed. The chancellor denied reformation, but he construed the deed as having created a tenancy by the entirety in fee simple.   Since Gertie survived her husband the court awarded the property to Gertie's heirs.

The land in dispute was inherited by Gertie Harmon and her three sisters, as tenants in common.   On December 15, 1938, the four sisters, inserting the following somewhat unusual language in both the granting and

habendum clauses, conveyed the property "to Dave Harmon and Gertie Harmon and unto his heirs and assigns forever." The deed was acknowledged on January 2, 1939, and was recorded the next day. By their prayer for reformation the appellees seek to have the references to "his" heirs and assigns changed to read "their" heirs and assigns.

The chancellor was correct in refusing to reform the instrument, for the proof lacks that clear and convincing character that is required in a case of this kind. *Meador v. Weathers,* 167 Ark. 264, 267 S. W. 787. The deed was typed upon a printed form. We conclude from our examination of the document that the word "his" was first typed in the blanks provided in the granting and habendum clauses, and that the word "their" was then typed over the original insertions. It is possible that the order of typing was the other way around; but in any event the typed words were stricken with pen and ink, and in their place the word "his" was written in both clauses. When the deed was recorded the day after its acknowledgment the word "his" was copied into the public record.

Although all three of the appellees were available as witnesses, only Myrtle Fields was called to testify. Upon being asked, more than fourteen years after the event, whether the changes were on the deed when she signed it, Mrs. Fields replied: "If they were, I did not see them." This is really the only direct proof supporting the argument that the deed was altered after its execution. The other testimony, offered without objection, is directed principally to various declarations by Dave Harmon that the land was to go to his son, and to similar declarations by Gertie that it was to go to her family. It is pretty clearly indicated that the pen-and-ink changes were made by the officer, now dead, who took the acknowledgment. When it is observed that no effort to obtain reformation was made during the years when Dave and Gertie Harmon might have testified, that the evidence of their declarations is in conflict, and that only one of the three persons seeking relief has come forward with her recol-

lection of the transaction, we are left without that abiding certainty of the truth which we should have before ordering reformation.

A minor contention of the appellees is that a resulting trust in Gertie Harmon's favor is presumed to have arisen from the conveyance. This argument is without merit. Dave Harmon paid his three sisters-in-law eight hundred dollars for their interest in the land, and of course, no trust resulted to Dave's wife when he himself paid the purchase price. *Strouthers* v. *Bogenshutz,* 108 Ark. 276, 157 S. W. 406. Gertie Harmon conveyed her own undivided interest to herself and her husband; and, since the passage of Act 86 of 1935, Ark. Stats., 1947, § 50-413, a tenancy by the entirety may be created in this manner. *Ebrite* v. *Brookhyser,* 219 Ark. 676, 244 S. W. 2d 625. Such a tenancy may exist in a life estate as well as in the fee. *Roach* v. *Richardson,* 84 Ark. 37, 104 S. W. 538. A wife's gift to her husband is closely scrutinized by a court of equity; but Gertie did not bring the matter into court during her lifetime, and we are not convinced that Dave overreached his wife or abused their relationship of confidence.

Reformation being denied, the remaining issue is that of interpreting a grant to a husband and wife and to *his* heirs and assigns forever. The chancellor treated the latter clause as surplusage and accordingly concluded that a tenancy by the entirety in fee simple was created. The appellees cite only two cases to support this result, but one of them is hardly in point. The deed construed in *Ellis & Co.* v. *Walker,* 101 Miss. 326, 58 So. 97, contained so many grammatical errors that the court was induced to regard the use of "his" as merely another clerical mistake. In the case at bar this vital word was deliberately inserted with a pen and cannot be treated as an inadvertence.

More to the point is the second case cited by counsel, *Bost* v. *Johnson,* 175 Tenn. 232, 133 S. W. 2d 491. There the deed was to a husband and wife and to her heirs and assigns. Tennessee had a statute similar to

Ark. Stats., § 50-403, which provides that the use of the word "heirs" is not necessary for the creation of an estate in fee simple. Relying upon this statute, the Tennessee court reasoned that a grant to A means the same thing as a grant to A and his heirs. Upon this reasoning it was held that the husband and wife took identical estates in fee as tenants by the entirety.

We are not at all persuaded that this view is sound. It is doubtless true that the statute requires the same effect to be given to a deed to A as is given to an entirely different deed to A and his heirs. But that consideration is obviously not controlling when the two phrases appear side by side in the same instrument. The contrast in wording certainly carries the implication of a similar contrast in meaning. Especially is this true in the case at bar, since the doctrine of the Tennessee case would mean that the grantors' deliberate substitution of the word "his" for the word "their" was a completely ineffective gesture, leaving undisturbed the legal effect of the original language.

The view adopted in Tennessee is decidedly a minority holding. It can hardly be doubted that a layman would interpret a conveyance to a husband and wife and thereafter to *his* heirs as creating a life estate in the grantees with a remainder to the husband's heirs. It happens that this lay interpretation is not quite correct, since there comes into play the Rule in Shelley's Case— a rule that is not concerned with the grantor's intention. Under this rule the word "heirs" is treated as one of limitation rather than as one of purchase; so the effect of such a conveyance is to make the husband and wife tenants by the entirety for life only, with a vested remainder in that spouse whose heirs are singled out. Rest., Property, § 312, Comment *r;* Powell on Real Property, § 379; *Badgley* v. *Hanford,* 12 N. J. Law J. 75; *Den ex dem. Hardenbergh* v. *Hardenbergh,* 5 Halstead 42, 18 Am. Dec. 371; *Cotten* v. *Moseley,* 159 N. C. 1, 74 S. E. 454; *Sprinkle* v. *Spainhour,* 149 N. C. 223, 62 S. E. 910, 25 L. R. A. N. S. 167. (In the *Sprinkle* case the court expressly rejected the argument, followed in Tennessee,

that a different result is required by a statute dispensing with the necessity for using the term "heirs" in the creation of a fee simple.) It follows that the deed now in question created a life estate in Dave and Gertie Harmon, as tenants by the entirety, with a vested remainder in Dave Harmon. The appellant, as the heir of Dave Harmon, is accordingly the owner of the property.

Reversed.

WARD, J., concurs.