SMART *v.* GUNNELS.

5-2558                                353 S. W. 2d 153

Opinion delivered January 29, 1962.

*Kitchens & Kitchens,* for appellant.

*Keith, Clegg & Eckert,* for appellee.

NEILL BOHLINGER, Associate Justice. This appeal presents two law suits concerning the same tract of land, which suits were consolidated and tried in the Columbia County Chancery Court.

On November 8, 1933, E. H. Harrell was the owner of forty acres of land in Section 10, Township 15 S, Range 20 W, and on this date he conveyed this forty acres of land to G. M. Wesley and wife. G. M. Wesley's wife was Bertha Wesley and this couple had no children, although G. M. Wesley and Bertha Wesley each had a child or children by former marriages.

G. M. Wesley and Bertha Wesley were divorced in 1951 and Bertha Wesley moved to California. In 1954 G. M. Wesley executed his deed to this forty acres of land to Collie Wesley, a son by a former marriage. In this deed Bertha Wesley did not join. G. M. Wesley died in 1955 and Bertha survived him.

Joella C. Gunnels and Maxine S. Ainsworth appear as the owners of a 5/8 mineral lease on this property and this lease is not questioned here. After the deed from G. M. Wesley to his son, Collie, the appellees unsuccessfully endeavored to obtain a lease from Collie on the remaining 3/8 of the mineral rights but the appellant, M. H. Smart, acquired this lease.

Under the lease held by the appellees they were required to secure oil production on the land by February 10, 1959 and failing to do so, their lease would terminate. It appears that the appellees endeavored to have the appellant join with them in their effort to secure production but the appellant declined. Thereafter the appellees drilled a well and secured production. The parties, appellant and appellees, then agreed between themselves for the installation of a pipeline from the tank batteries to Sohio Petroleum Company to care for the oil produced on the land involved.

In order to market the oil from the property it was necessary that an abstract of title and a title opinion be secured and the parties hereto appear to have agreed on securing the abstract at their joint costs.

When the abstract was examined by counsel it was discovered that Bertha Wesley had an interest in the land involved and it further appears that the examining attorney endeavored to contact the appellant and advise him of this fact. However, the appellees became aware of this situation before the appellant was advised and the appellees dispatched an emissary to California where there was secured a mineral lease from Bertha Wesley to the appellees conveying the remaining 3/8 interest in the minerals on the land and this lease was promptly

placed on record in Columbia County where the land is situated.

The appellant brings this action and raises six points for a reversal of the decree of the chancellor wherein it had been found that the appellees were the owners of the lease to the entire mineral rights in the property.

The controlling questions that must first be decided are the appellants' contentions that the deed from Harrell and wife was a conveyance without limitation and no estate by the entirety was evidenced by the deed; that the deed was not ambiguous, and that the chancellor erred in taking testimony in order to arrive at the intent of the parties to the deed.

The deed is ambiguous and the chancellor was correct in taking testimony to establish the intention of the parties. A deed, like the evidence of any other contract, should be examined to ascertain the intention of the parties. We do not have the original deed but the copy in the abstract presents a deed that reflects poor draftsmanship. The preamble to the deed recites that the consideration for the property was paid by "G. M. Wesley and wife". The granting clause was worded to "G. M. Wesley and wife and to his heirs and assigns forever". The habendum clause contained the words "unto the said G. M. Wesley and unto his heirs and assigns forever". The clause relinquishing dower and homestead by Mrs. Harrell was worded "relinquish unto the said G. M. Wesley all my rights". The warranty clause reads: "And we hereby covenant with the said G. M. Wesley, E. H. Harrell that we will forever warrant and defend the title to the said lands against all claims whatever". It thus appears in this last clause that Harrell was warranting title to himself.

In viewing this deed we first take into consideration the fact that Bertha Wesley was the daughter of E. H. Harrell, the grantor in the deed. Bertha Wesley and G. M. Wesley had no children but G. M. Wesley had children by a former marriage. A logical assumption at

this point would be that the natural bonds of blood and affection would prompt the grantor, Harrell, to make provision for his daughter, Bertha Wesley. But aside from any assumption, the deferred payments on the land were made by the joint efforts of G. M. Wesley and Bertha Wesley, his wife, who worked the land and in addition, Bertha Wesley owned some timber which she sold and applied the proceeds on the payment on the property from all of which we must assume that she was something more than a nominal party. This court faced a similar problem in the case of *Redmon* v. *Hill*, 233 Ark. 45, 342 S. W. 2d 410. There the deed was made to Duncan Hill and Emma Hill and the granting clause contained the words ''unto *his* heirs and assigns''. [Emphasis ours.] In reversing the chancellor and holding that an estate by the entirety was created in Hill and his wife, we said:

''* * * the Chancellor took the view that our decision in the case of *Harmon* v. *Thompson,* 223 Ark. 10, 263 S. W. 2d 903, precluded him from holding the deed conveyed an estate by the entirety to Hill and his wife. In this we think the Chancellor was in error. In two important respects the facts in the *Harmon* case are easily distinguishable from the facts in the case under consideration. One, in the cited case it is clear, because of the erasures and changes, that the word 'his' was deliberately and purposely used instead of the word 'their'. Such is not the case here. Two, in the cited case the all important fact of intent is not definitely shown, as it is in this case. It may be also added in this connection that there is substantial evidence that Mrs. Hill furnished a large part of the money to pay the debt owing Meyer. This fact substantiates the direct evidence on the matter of intent. The decision and the reasoning in the *Harmon* case is sound, but it is based entirely upon the peculiar facts of that case. In the case of *Jackson* v. *Lady,* 140 Ark. 512, at page 523, 216 S. W. 505, at page 508, this court said: 'In the construction of a deed like any other contract it is the duty of the court to ascertain, if possible, the intention of the parties, especially that

of the grantor.' To the same effect is the decision in *Carter Oil Co.* v. *Weil,* 209 Ark. 653, 192 S. W. 2d 215, 217, where it was stated that: 'All deeds are to be construed favorably, and as near the intention of the parties as possible, consistently with the rules of law.' ''

Viewing this case in the light of the authorities cited and viewing it from every angle, we think the chancellor was correct in finding that an estate by the entirety was intended to be conveyed to G. M. and Bertha Wesley and the deed was properly so construed, and that Bertha, as the survivor, had the fee.

The appellant contends, however, that since the parties had agreed on a partition of the land between themselves so as to prevent cross-drainage, the contract constituted a joint adventure. It must be borne in mind, however, that at the time the agreement to partition was made, the appellant had held himself out as the owner of a 3/8 interest in the minerals on the land which position was lost to him when it was determined that Bertha Wesley, as a survivor in the estate by the entirety, was the owner of the fee and that the deed from G. M. Wesley to Collie Wesley conveyed nothing.

We find nothing that indicates a joint adventure. In discussing the essentials of joint adventure, this court in *State, Ex Rel. Attorney General,* v. *Gus Blass Co.,* 193 Ark. 1159, 105 S. W. 2d 853, said:

''To constitute a joint adventure, there must be the elements of a partnership. As between the parties themselves there must have been an intention to form a partnership as expressed in the contract or gathered from acts of the parties and circumstances which may interpret such agreements. As between themselves or third parties, 'there are certain requisites necessary before the law will in any event regard the relationship as that of partners. The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or services and having a community of

interests in the profits.' *Meehan* v. *Valentine,* 145 U. S. 611, 12 S. Ct. 972, 36 L. Ed. 835. The doctrine announced in this case was quoted with approval in *Cully* v. *Edwards,* 44 Ark. 423, 51 Am. Rep. 614. That case was followed in *Roach* v. *Rector,* 93 Ark. 521, 123 S. W. 399, in which it was stated in effect that the parties to the contract must be co-principals in the business, and if it is owned by one, and the other receives the profits or a portion thereof, for services or otherwise, the relationship of partners does not exist. Quoting further from that case, it is said: 'As between the parties themselves, before it has been said that the relationship of partners has been created, it is essential that the parties themselves intended by the effect of their contract to form such a partnership business, and that they should have a common ownership and community of interest in the properties of the business, and they should share in some fixed proportion in the profits thereof only as profits of the business.'

These rules apply not only to a general partnership, but to a limited one, a joint adventure.''

While the appellants did agree to provide part of the costs of a pipeline to care for the oil from the property, mere joint ownership of the property does not constitute joint adventure and after the pipeline had been laid, that undertaking was at an end. The appellant contends further that his agreement to pay one-half the costs of the abstract and title opinion brings his transaction within the realm of a joint adventure. We do not so view it. Before the oil from the property could be marketed it was necessary that an abstract and title opinion be procured. If the appellant did not join with the appellees in procuring these two things and bearing only one-half the costs he would have been faced with the necessity of procuring his own abstract and title opinion and the most that can be said of his action in this particular is that he was exercising good business judgment.

As to the matter of advance notice in regard to the title, we find that the attorney examining the abstract endeavored to locate the appellant at the time he prepared his opinion but was unable to do so. However, the appellant knew who the attorney was and he could have prepared for the eventuality. The appellees, on securing the information, moved promptly and we find nothing in the record which indicates that the relationship between the parties was such that the appellees were under any obligation to convey the information in regard to the title to the appellant.

Appellant's final point is that he acquired interest in good faith for value without notice of claims of appellees, who are barred by laches and estoppel. We find no merit in this contention. The deed from Harrell and wife to Wesley and wife had been on record since February 5, 1938 and all matters touching the interest of the various parties hereto were matters of public record and the appellant is held to have proceeded in full knowledge thereof.

The decree of the chancellor is in all things affirmed.