MANERS v. WALSH.

Opinion delivered November 11, 1929.

*John W. Moncrief* and *M. F. Elms,* for. appellant.
*W. A. Leach,* for appellee.

MEHAFFY, J. The appellee, plaintiff below, brought this suit against the appellant and Ida R. Williams, alleging that on the 9th day of July, 1928, she and the defendants entered into the following contract:

"This contract, made and entered into this 9th day of July, 1928, by and between Ida R. Williams and W. H. Maners, parties of the first part, and Edyth Walsh, party of the second part, is as follows, to-wit: Parties of the first part have this day sold to party of the second part the following described property, lying in the Northern District of Arkansas County, Arkansas, to-wit: Lot 14, and 10 feet off the north end of lot 15, all in block 6, Bordfeldt's Addition to Stuttgart, Arkansas, for and in consideration of the sum of $9,762.50, paid and to be paid as follows: $2,000 by transfer of the following property lying in the Northern District of Arkansas County, Arkansas, to-wit: Lots 11 and 12, block 17, Reinsch's Addition to Stuttgart, Arkansas, in Arkansas County, Arkansas. The balance of $7,762.50 shall be divided into 115 installments of $67.50 each, which shall be payable monthly hereafter, the first of which installments shall mature and become due and payable on the 15th day of August, 1928, and. one each month thereafter until the entire series of payments or installments is fully paid. The said monthly installments shall bear interest at the rate of eight per cent. per annum after maturity thereof. It is agreed that said monthly installments or payments hereinbefore mentioned are to be paid directly to W. H. Maners until the balance due the said W. H. Maners from Ida R. Williams in accordance with the terms of a cer-

tain decree rendered by the chancery court of the Northern District of Arkansas County, Arkansas, on or about the 11th day of June, 1928, in a cause therein pending, wherein B. L. Williams and others were plaintiffs and R. L. Metsker and others were defendants, and the said W. H. Maners was an intervener therein, said decree being for the principal sum of $2,018.01 in favor of the said W. H. Maners, with costs thereon, and interest thereon at the rate of ten per cent. per annum from the rendition of said decree. After the amount herein mentioned due the said W. H. Maners is fully paid, then the balance of the consideration hereinbefore expressed shall be paid by the said party of the second part unto Ida R. Williams.

"It is understood and agreed among the parties hereto that a mortgage foreclosure upon the above property is now pending in the Chancery Court for the Northern District of Arkansas County, Arkansas, upon which a decree has been rendered, and that it is necessary for the property herein described to pass through a commissioner's sale to the end that the title may be completed, and, after that has been done, the party of the second part agrees to procure a loan from some building and loan association, and pay the proceeds thereof to the said parties of the first part, or unto W. H. Maners, in case said Maners has not been paid in full the amount due him as herein set forth.

"The party of the second part hereby agrees and binds himself to obtain and carry such insurance to protect against the hazards of fire, tornado, windstorm, etc., upon the buildings upon said property, to equal the balance she should at any time owe the parties of the first part, and to have inserted thereon proper mortgage clauses or loss payable clauses in favor of the parties of the first part.

"It is also further agreed that should any one of the said monthly installments or payments herein provided become due and then remain unpaid for a period of ten days, then in that event parties of the first part shall have

the privilege of electing to declare all of the remaining payments then past due and payable, and in such case all payments that have been made shall be taken in consideration as rents for the use and occupancy of said building, the possession of which shall be delivered unto the party of the second part upon the execution of this contract. And, in event that the said party of the second part should become delinquent in her payments, and the said parties of the first part should then elect to declare the said contract breached, the said party of the second part agrees to vacate and deliver up possession thereof without the necessity of any legal proceedings to oust her.

"During the period of time through which this contract runs the party of the second part agrees to keep and maintain said buildings in good repair, and to see that same is cared for and preserved against all abuse of every kind and nature, save ordinary wear and tear and the acts of God or the public enemy.

"In witness whereof said parties have hereunto set their hands on this the 9th day of July, 1928.

(Signed) "Ida R. Williams.

(Signed) "W. H. Maners.

(Signed) "Edyth Walsh."

Plaintiff further alleged that she paid $2,000 on the purchase price, and that the possession of the property was delivered to her, and that on the 15th of August, 1928, she paid the first installment in keeping with the contract. That she owned and operated a cleaning and pressing establishment, and was preparing to move in the purchased property, and that she made lasting improvements upon said property at an expense of $1,000, which improvements enhanced the value of said property in that amount. That on the 4th day of August, 1928, defendants permitted the property purchased by her to be offered for sale by the commissioner in chancery, and permitted said property to be sold to a party other than themselves. That she was notified by the purchaser, and, for that reason, withheld further payments. On October

3, 1928, the sale was approved, and thereafter plaintiff was ejected from the premises by virtue of a writ of assistance. That defendants permitted the property to be sold and title passed to other persons, and breached their contract, and that performance is now impossible, and asks for damages in the sum of $3,000.

Separate answer was filed by W. H. Maners, denying each material allegation in plaintiff's complaint, and alleging that the interest that he had in the property mentioned in the contract was a mortgage to secure him in a loan he had made to the defendant Williams and her husband; that he was engaging in foreclosing at the time the contract was made; that his mortgage was for an indebtedness of $2,018.01 and interest, and was a first lien on the property; that he had secured a decree of foreclosure; that said property was owned by the defendant Williams, and her title was only subject to a mortgage indebtedness due to Maners; that on the 9th day of July, 1928, the plaintiff, Walsh, and the defendant, Williams, sought Maners out, and informed him that plaintiff Walsh was about to purchase the property from defendant Williams, but Walsh was not in a position to make full payment of a mortgage indebtedness held by Maners. He was informed by the plaintiff and the defendant that they were not able to make the deal unless he would agree to accept payment of indebtedness in installments from plaintiff Walsh. Plaintiff, Walsh, had agreed to convey to defendant Williams lots 11 and 12, in block 17, for the price of $2,000, which, it later developed, was incumbered by mortgage indebtedness, thereby constituting a breach of her contract. That plaintiff Walsh agreed to pay Maners in 115 monthly installments of $67.50 each; that she and defendant Williams represented to Maners that Walsh would make payment of monthly installments until the mortgage indebtedness due him was fully paid. It was understood that he had no interest in the property other than stated. He was not selling said property, and only for the purpose of

accommodating plaintiff Walsh and defendant Williams to the end that they might make the deal, and only for the purpose of collecting the indebtedness due him in installments, instead of all immediately, or within a period of 30 days, which he could have done and which he had a right to do under his foreclosure decree, and for the purpose only of securing indebtedness due him, upon a thorough understanding of all these facts with plaintiff, Walsh, and defendant Williams, he signed the contract. He was to receive no part of the consideration or profit of the contract other than the indebtedness due him, and did not receive any part of the consideration or profits, and had no interest in the property, nor did he expect to receive any more than the indebtedness that plaintiff Walsh and defendant Williams sought to secure to him by said contract. That he did not propose in said contract, nor did he at any time agree, to purchase said property at said commissioner's sale, nor was any duty cast on him by the contract to purchase same or to take other steps toward affecting sale or title, as plaintiff Walsh expected to receive title to property from plaintiff. Plaintiff, Walsh, knew that Maners had no title or interest in or to the property other than mortgage indebtedness thereon, and was fully possessed with knowledge of all facts concerning same, and was fully informed that defendant Maners' only interest in same was to secure and collect mortgage indebtedness due him. That the contract, in so far as defendant Maners is concerned, is constituted a mortgage on said property to secure the indebtedness due him, and it was intended by all parties that it should only constitute a mortgage to secure to him the indebtedness due him, and was executed with the understanding of all parties and with that intention of all parties, and defendant Maners tenders back the sum of $67.50 paid by Walsh, with interest.

Defendant Maners filed a demurrer before filing answer, and then with his answer repeated the demurrer, which was to the effect that the plaintiff's complaint did

not set forth facts sufficient on its face to constitute or state a cause of action against Maners. The court overruled the demurrer, and defendant excepted, and then filed a motion to transfer to equity.

The court instructed the jury that the verdict should be against both defendants for such damages as might be shown by the testimony. The jury returned a verdict against both defendants for $1,000 as damages for the property conveyed to Ida L. Williams and $400 damages against both of them for improvements. The property conveyed by Walsh to Williams was in part payment of the property alleged to have been purchased by plaintiff, and it is alleged that the property purchased by her was worth something more than $9,000. Judgment was entered against Maners and Williams for $1,400, with interest and cost.

Williams did not appeal. Maners filed a motion for a new trial, and has prosecuted his appeal to this court.

We deem it unnecessary to set out any of the evidence, because the majority of the court have reached the conclusion that the court erred in not transferring the case to equity. Mr. Justice Smith and the writer do not agree with the majority that the case should have been transferred to equity.

The undisputed proof in the case shows that Maners had a mortgage on the property mentioned in the contract set out above, to secure an indebtedness of something more than $2,000; that the property was worth approximately $9,000. The only interest, as shown by the pleadings, that Maners had in the property mentioned in the contract was a mortgage to secure the indebtedness due him, and he alleges that all parties knew this, and that the contract was signed with that understanding, and that the only interest he had in it at all was to collect the indebtedness due him; that it was understood by plaintiff Walsh that this was the only interest he had, and that he signed the contract as an accommodation to Walsh and Williams, and agreed to take the money due

him in installments of $67.50 per month, instead of getting it all, as he might have done, by a sale of the property. Maners contends that as to him the instrument or contract was intended to be a mortgage, and nothing more.

A majority of the court are of the opinion that the cause should have been transferred to equity, because it is a settled doctrine of equity that the form of a transaction will never preclude inquiry into its real nature, but in all cases the intention of the parties must control, irrespective of the form; and consequently, if a conveyance is made as a security for money, in whatever form the conveyance is made or whatever cover may be used to disguise the transaction and hide its real character from others, as between the parties and as to all persons who have notice that the property is merely held as collateral security, it will be held and treated as a mortgage. 27 Cyc. 991.

"Another maxim of equity is that equity regards the substance rather than the form, or that equity regards the substance and intent, not the form. This principle is well established, and is expressed in more or less similar language in many cases. * * * This maxim is as applicable at the present time as it was when it was first formulated. By force of principle equity goes behind the form of a transaction in order to give effect to the intention of the parties, either to aid an act abortive at law because formally defective, or to impose a liability as against an evasion by a formal concealment of its true character. In the construction of a written instrument, equity always attempts to get at its substance and to ascertain, uphold, and enforce the rights and duties that spring from the real intention of the parties. In doing so, while it will of course not change the words of the instrument, the court of equity will look into all the circumstances under which it was made, in order to determine the proper meaning of the transaction. It will do this not only to sustain a just claim but to defeat an unlawful demand." 21 C. J. 204-5.

Equity looks beyond the mere form in which the transaction is clothed and shapes its relief in such way as to carry out the true intent of the parties to the agreement, and to this end all the facts and circumstances of the transaction, the conduct of the parties thereto, and their relations to one another and to the subject-matter, are subjects for consideration. *Vance* v. *Anderson,* 113 Cal. 532, 45 Pac. 816; *Crisman* v. *Kingman Plough Co.,* 106 Ark. 166, 152 S. W. 989; *Petty* v. *Gacking,* 97 Ark. 217, 133 S. W. 832, 33 L. R. A. N. S. 175; *Lane* v. *Walker,* 77 Ark. 103, 91 S. W. 22.

The defendant Williams not having appealed, the judgment entered in the lower court against her is not affected by the appeal.

The court having reached the conclusion that the case should have been transferred to equity, it becomes unnecessary to discuss either the evidence or the instructions.

The judgment of the circuit court is reversed, and the cause remanded with directions to transfer same to equity.