OVERTON *v.* PORTERFIELD.

4-7239                                          177 S. W. 2d 735

Opinion delivered February 7, 1944.

*Charles W. Mehaffy* and *J. R. Wilson*, for appellant.

*Arnold & Arnold,* for appellee.

- McHANEY, J. Appellants and appellee, Porterfield, not including their wives, eight in number, own the fee title to the southeast southwest 26-13-26, Hempstead county, Arkansas, each owning a one-eighth interest, as tenants in common. By an oil and gas lease dated April 10, 1943, appellee, Porterfield, conveyed to the other appellee, Joseph Green, an oil and gas lease in and to his undivided one-eighth interest, and on April 20, 1943, appellant, W. F. Springstead, and wife, conveyed to appellant, Robert Ernest Mathis, an oil and gas lease in and to his undivided one-eighth interest. Thereafter, appellees brought this action against appellants, alleging the ownership as above and that it was desirable that said lands be developed for oil and gas as a unit and that each interest would be more valuable, if so developed, than if it should be divided, and prayed that the oil and gas leasehold estate in and to the entire 40 acres be sold by a commissioner and the proceeds divided among the owners proportionately. The suit was brought for partition under the provisions of §§ 10549-10557 of Pope's Digest. Appellants answered alleging the unconstitutionality of said sections of the statutes in that they attempt to provide a method to deprive appellants of their property without due process of law and in that they conflict with art. 2, § 18 of the state Constitution prohibiting the General Assembly from granting any citizen special privileges or immunities.

The facts are stipulated. In addition to those stated above, it is stipulated that appellee, Green, lessee of Porterfield and wife of their interest, is an employee of Barnsdall Oil Company, resides in Tulsa, Oklahoma, and will on demand convey all his interest to his employer. The consideration paid by him for said lease was

$15 per acre and an oil payment of $5,000 out of one-eighth of seven-eighths. Also that appellant, Springstead, leased his interest to Mathis for a consideration of $60 per acre; that it is desirable that the property be developed for oil and gas as a unit and the value of each interest would be more, if so developed; that all the original owners intended to develop it as a unit and that the leasehold cannot be partitioned in kind without prejudice and damage to the owners; and that the oil payment reserved in the lease from Porterfield to Green has been released of record to Green.

Trial resulted in a decree sustaining the statute under which the proceeding is brought, and ordering the sale of a commercial oil and gas lease covering the entire oil and gas leasehold interest in and to the 40-acre tract here involved, on certain conditions therein set out, by a commissioner appointed by the court for the purpose, for cash, after notice published as therein directed; and after sale to report his actions to the court for a confirmation or rejection of said sale. Other matters pertaining to the sale and the effect of confirmation thereof are set out. This appeal is from that decree.

This is a case of first impression under said sections of the statute. Briefly summarized, § 10549 provides that when two or more persons own as tenants in common any land in fee, the oil and gas under such lands in this state, and there is no actual production therefrom and no outstanding oil and gas lease thereon covering the entire leasehold estate, "any one or more of the owners of said land in fee" and of the oil and gas therein "may have a sale and partition of the entire oil and gas leasehold interest therein and thereon," in the manner set out in the statute. The conditions provided by this section exist here.

Section 10550 provides the procedure in the chancery court, what the petition shall contain, who the defendants shall be and what the prayer shall contain. Sections 10551, 10552 and 10553 relate to procedural matters. Section 10554 provides that, under certain condi-

tions, the court may appoint a receiver to negotiate for the lease of the property, subject to the approval of the court. Section 10555 provides that "in so far as the same are not in conflict with this act" (No. 15 of 1935), §§ 10508 to 10548, relating to partition of lands, shall apply, except the court does not have to find that such interests are not susceptible of partition in kind before ordering the sale of an oil and gas lease, but only that it is desirable that the property be developed as a unit, and would enhance the value of the interests to be so developed. Other sections are not pertinent here.

The ancient jurisdiction of chancery to partition lands was not divested by our statute, § 10509 of Pope's Digest, which provides that the petition therefor shall be filed in the circuit court. It was so held in the early case of *Patton* v. *Wagner,* 19 Ark. 233, where the petition for partition was filed in chancery and the trial court dismissed it because of the statute. This court held the lower court was in error, and said: "The statute but cumulates the remedy; and if, nevertheless, a party should elect to seek his remedy in chancery, as these parties seem to have done, he is entitled to such as the chancellor can afford him." See, also, *Lester* v. *Kirtley,* 83 Ark. 554, 104 S. W. 218. So, the chancery court had jurisdiction here, if the statute be valid, as it attempted to confer no new or additional jurisdiction.

The principal attack is on the statute—that it denies appellants due process and that it confers special privileges. Just how it does either is not clearly stated or argued in appellants' brief, nor are we able, with or without said argument, to perceive the alleged vice in the statute. It is said that while it may provide for compensation, it does not provide for just compensation; that it is unfair and inequitable for one of the co-tenants out of a total of eight, to compel the other seven to enter into a contract of sale of an oil and gas lease which they are unwilling to make; and that the democratic principle of majority rule should control. Much of this might well be addressed to the General Assembly to amend or

repeal the act, act 15 of 1935, or to the discretion of the trial court, hereinafter discussed.

Our statutes, § 10508, *et seq.* of Pope's Digest, relating to partition and sale of land are of long standing and are to be found in the Revised Statutes, chapter 107, except that certain sections were taken from the Civil Code. So far as we have been able to ascertain, no person has ever questioned the constitutionality thereof, and we are unable to perceive any good reason why the argument now made could not have been made with equal force to the old statute. We have held under the old statute for partition that any person desiring a division of land held in joint tenancy, in common or in coparcenary has the absoluate right to a decree partitioning the prpoperty and ordering it sold if it cannot be divided in kind, no matter how small the interest or how great the majority who object to a division or sale. *Ward* v. *Pipkin,* 181 Ark. 736, 27 S. W. 2d 523. We there said: "Appellant conceded that appellee owned a half interest in the property. There was no dispute that it could not be divided in kind. Therefore, appellee had an absolute right to a decree partitioning the property and ordering it sold."

Here appellee, Porterfield, owned a one-eighth interest in the fee and also in the minerals. He wanted to lease the lands for the development of oil and gas. The seven other co-tenants did not want to lease. The statute here involved was enacted to cover just such a situation, so that one or the minority interest could not be frozen out by the majority, or so that one who wished to develop for oil and gas through a lease of the whole could not be prevented from doing so by the others who did not wish to do so. This is not a deprivation of due process or a granting of special privileges. It applies to all alike. If any advantage is given in this particular case, it appears to be with appellants who are able financially to develop the whole tract, and, therefore, to bid at the sale, in competition with Barnsdall or any other bidder, for they would be required to pay only one-eighth of the lease purchase price, whereas any other successful bidder would have to pay in full. If appellants wish to hold the

land or the oil and gas lease thereon for a speculative higher value, they may do so by purchasing the lease at the commissioner's sale and paying to Porterfield a small delay annual rental of $5 'for five years before actual development under the court's decree. We find no constitutional objection to the act and the cases cited by appellants such as *Lewis* v. *State,* 110 Ark. 204, 161 S. W. 154, and *Noble* v. *Davis,* 204 Ark. 156, 161 S. W. 2d 189, do not sustain them in the contention. An interesting case sustaining the right to partition of a mineral interest in a one-acre tract of land under the Texas statute was decided by the Supreme Court of Texas May 12, 1943, in the case of *Mosely* v. *Hearrell,* 171 S. W. 2d 337. While the validity of the Texas statute was not in question, but was taken for granted, the court after commenting on their statute relating to partition of lands and the 1917 amendment which added the words ''or of any mineral, coal, petroleum or gas lands, whether held in fee or by lease or otherwise,'' said: ''This amendment enlarges the purpose of the statute so as to give the right of partition not only to joint owners of real estate, or of any interest therein, but as well to joint owners of any oil or gas lands, 'whether held in fee or by lease or otherwise'.''

As to the nature of the right to have a partition and sale of the oil and gas leasehold, whether an absolute right or one resting in the sound discretion of the trial court, we are of the opinion that the statute does not impose the imperative duty on the court to order a sale in every case where a petition is filed by one or more co-tenants in compliance with the statute. As said by the Supreme Court of Oklahoma in *Wolfe* v. *Stanford,* 179 Okla. 27, 64 Pac. 2d 335, with reference to partition and sale of royalty interests, but which we think might, under certain circumstances, apply as well to partition and sale of leasehold interests, ''It is at once apparent that the right to coercive judicial partition through sale and division of the proceeds may, if wholly unqualified, become a weapon of oppression and fraud in the hands of the financially fortunate. Thus upon the approach of de-

velopment, the right to partition might be used as a means of foreclosing through sale the interest of the royalty owner of limited means. Greatly enhanced value might place the property beyond his ability to elect to purchase or bid. In the absence of disagreement between the parties rendering co-ownership of the property impractical, the courts should not be impotent to prevent themselves from becoming an instrument of fraud and oppression under the circumstances suggested. They must, therefore, be recognized to be vested with sufficient discretion in awarding or denying relief to avoid the evil herein anticipated. Of course, inability of a cotenant to purchase should not constitute a defense under ordinary circumstances, that is, in the absence of approaching development or rapidly increasing values.'' We think no abuse of discretion is shown in this case and that the court properly awarded partition and sale.

Another argument by way of suggestion is that, by § 10554, such a lease can only be negotiated through a receiver appointed by the court. We cannot agree, as the whole statute, including that section, clearly contemplates a sale by a commissioner. That section, in the last sentence, so expressly provides, and the last clause in that sentence is ''and any person thereafter purchasing (that is, after a receiver's sale) said oil and gas rights, or any interest therein, either from the owners or from the commissioner of the court selling the same under the decree of sale and partition, shall take the same subject to the oil and gas lease so executed by said receiver.''

It is finally argued that the court erred in ordering a sale for cash instead of on a credit of three months as provided by § 8199 of Pope's Digest. That section provides that sales of real property made by the court shall be ''on a credit of not less than three nor more than six months—to be determined by the court.'' That section was § 407 of the Civil Code. Sections 405, 406 and 408, preceding § 407, all have to do with the foreclosure of mortgages or liens, and all the cases cited under § 407 are concerned with such foreclosures. So § 8199, being § 407 of the Civil Code, has no reference to sales by

order of court in partition proceedings. Section 10533 of Pope's Digest is incorporated by reference in the statute here under consideration and it provides: "The court making such order of sale shall therein direct the terms and conditions, time and place of sale, the credit, if any, and the security to be taken," thus giving the court the power to order a sale for cash or on credit, as the court may determine, and this section was not affected by § 8199, even though passed at a later date.

We find no error, and the decree is accordingly affirmed.

KNOX, J., concurs.