TAYLOR *v.* TAYLOR

5-3785                                    399 S. W. 2d 498

Opinion delivered February 28, 1966

*W. B. Howard* and *Jack Segars,* for appellant.

*Rhine & Rhine,* for appellee.

GEORGE ROSE SMITH, Justice. This proceeding began as a suit filed by the appellee, the husband, for a divorce on the ground of personal indignities. He elected to take a voluntary nonsuit when his wife, the appellant, denied his right to a divorce and filed a counterclaim asking for separate maintenance. After a hearing upon the counterclaim the chancellor refused to award separate maintenance, finding that the parties had executed a property settlement agreement in which the wife relinquished any claim she might have for alimony or support. Whether the chancellor properly construed the written agreement is the principal question on appeal.

The Taylors were married in 1922 (or perhaps

1919) and had lived together for more than forty years when they separated in May of 1963. Taylor was then a building contractor, engaged in business with one of his sons. Mrs. Taylor was sixty-one years old and is not shown to have had any training enabling her to earn a living.

Following the separation each of the parties employed an attorney and, with the assistance of counsel, negotiated a detailed property settlement agreement. The contract comprises four typewritten pages. After the usual declaration of the couple's intention to live apart from each other the contract describes in detail the several items of real and personal property that the parties owned and sets out the division that was agreed upon. There is no specific reference to alimony or support, but the contract does close with this language, which is relied upon by the husband:

"It is mutually agreed between the parties hereto that this agreement shall constitute an absolute and final property settlement and separation agreement between the parties and that in the event either party shall bring suit for divorce, this agreement and property settlement may be used and considered as a complete and final settlement of all property rights between these parties. The husband hereby waives any interest and releases completely any right, title or interest he might have in any property the wife owns at this time or that she might acquire at any time hereafter, and the wife hereby waives and releases to the husband any right, title and interest she might have, including any statutory rights she may have acquired or might acquire in any property owned by the husband at this time or acquired by him at any future date.

"It being the purpose of this agreement to dissolve and settle absolutely any interest or claim either of these parties might have in the property of the other and to relinquish any claim that either

party may have against the other growing out of their marriage relationship and contract.''

The contract is long and detailed. Except for routine preliminary recitals almost every word is directed toward the division of the property acquired by the couple during the many years of their marriage. Despite the absence of any explicit reference to the husband's duty of support or to the wife's claim to alimony the appellee contends that this issue was foreclosed by the closing clause in the contract: ''. . . and to relinquish any claim that either party may have against the other growing out of their marriage relationship and contract.''

We do not find this argument persuasive. Standing alone, the pivotal clause might be interpreted either to be limited to claims involving existing property rights or to be intended as a sweeping renunciation of all matters incident to the marriage, including alimony, support, conjugal rights, consortium, etc. But when the contract is considered as a whole, with a proper regard to the situation that existed between the parties, we are convinced that the intention of the contracting parties was not as broad as the appellee now insists.

Several considerations enter into our conclusion. In a contract that was prepared by lawyers and that was manifestly worded with care we should expect so obvious and important a matter as the duty of support to be specifically provided for if it was to be concluded by the agreement. The introductory clause in the final paragraph, ''It being the purpose of this agreement . . . ,'' implies that what follows is in the nature of a summation of what has gone before. Yet it is now suggested that the concluding summation introduced a new and vital provision that had not previously been touched upon.

Finally, when an agreement is open to two or more interpretations a familiar rule comes into play: ''The

offered testimony revealed the situation of the parties and the subject-matter of the contract, the circumstances, of the transaction, the inducement for making the contract, and the object the parties had in view. It is proper for the court to be in possession of these in order to determine what the parties meant by the language employed to express their agreement. Courts may acquaint themselves with the persons and circumstances that are the subject of the statements in the written agreement, and are entitled to place themselvs in the same situation as the parties who made the contract so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and the correct application of the language to the things described." *Wood* v. *Kelsey*, 90 Ark. 272, 119 S. W. 258 (1909).

In the case at bar most of the couple's property was owned jointly. Under the settlement Mrs. Taylor did not receive much more than the rights of ownership already vested in her. Taylor was a successful business man apparently able to continue to earn a substantial income. It was he who seems to have been insisting upon the separation. The specific property that the agreement set aside to Mrs. Taylor appears to have been of decidedly smaller value than her right to the support she was entitled to demand. Considering the record as a whole we are convinced that the property settlement should not be construed as a bar to Mrs. Taylor's claim for separate maintenance. The cause will be remanded for further proceedings upon that issue. Needless to say, what Mrs. Taylor has received under the settlement will be taken into account in fixing any amount that may be allowed as separate maintenance.

It is also argued that an inadequate attorney's fee was allowed to Mrs. Taylor's present counsel (who did not represent her in the negotiations for the property settlement) for his work in the trial court. This contention involves matters that the chancellor observed at firsthand and about which he was in a much better po-

sition than we are to reach a correct conclusion. We are not willing to say that he abused his discretion in making this particular allowance.

Reversed.

WARD, J., dissents.

PAUL WARD, Justice, dissenting. I am unable to agree with the majority's interpretation of the "property settlement agreement."

In the last paragraph appellant agreed "to relinquish" any claim she "might have against" appellee "growing out of their marriage relationship and contract." It is beyond me to understand how any right which appellant might have against appellee for "separate maintenance" would come from if it didn't "grow out of their marriage relationship . . . ." I can't imagine how language could be made any plainer than that used by the parties.

The courts, I fear, are breeding trouble when they refuse to take plain, simple words at their accepted face value.