ABE SCHNITT v. Lyman S. McKELLAR et al

5-4208                    427 S. W. 2d 202

Opinion delivered March 18, 1968
[As amended April 29, 1968.]

*Simon, Carroll, Fitzgerald & Fraser, Shepherd*, and *Arnold & Arnold,* for appellant.

*McKay, Anderson & Crumpler,* for appellees.

JOHN A. FOGLEMAN, Justice. This case involves a determination whether the trial court was correct in finding that certain instruments executed by certain Mc-Kellar heirs conveyed their interests in an undivided one-fourth working interest in oil, gas and minerals to J. H. Carmichael, Jr. and J. C. Stevens.

Appellant is the successor in interest to some of the McKellar heirs who were parties to these instruments. He filed this action for a declaratory judgment to determine the interests of Carmichael and Stevens and their respective wives under the instruments and for partition of all surface and mineral interests. Inasmuch as the

evidence bears out factual recitations contained in these instruments,[1] and the intention of the parties to the instrument must be gathered from its four corners, we set out pertinent portions thereof:

"THIS CONTRACT, made and entered into on this 13 day of May, 1940, by and between\* \* \*(hereinafter called clients) and J. H. Carmichael, Jr. and J. C. Stevens, Attorneys at Law, (hereinafter called attorneys) WITNESSETH: That the said Clients own the following described lands, to-wit: \* \* \*

THAT, Whereas, there were executed certain oil, gas, and mineral leases on said lands, and there was discovered oil on said lands, and said lessees and assigns have failed to carry out the terms and conditions, both expressed and implied, in connection with said lease agreements, and have failed to properly develop and operate said lease, which has caused the said Clients to suffer great loss and damage.

THAT said failure on their part amounts practically to abandonment, for a period of over twelve (12) months. They have permitted said lands to be drained and said lease should forfeit to the original owners, and in addition they are entitled to damage in a large sum, sufficient to compensate them for all their loss.

WHEREAS, the said Clients are desirous of prosecuting their claims in every way possible, in order to recover their seven-eighths (7/8) working interest in said lands and in addition all claims of damage, and all other matters connected with said property and the clearing of the title, and for these purposes the said Clients hereby employ J. H. Carmichael, Jr. and J. C. Stevens to represent them in

---

[1] There are two virtually identical documents, differing only in that some of the heirs signed one and some the other.

these matters and agree to pay them as their fee two-eighths (2/8) of their seven-eighths (7/8) interest, leaving said Clients five-eighths (5/8) working interest, and in addition agree to pay them the same proportionate amount of all sums recovered by way of damage or in any other way, said fee to be paid whether recovered in court action or by compromise.

SAID Attorneys are empowered and directed to take any and all steps they deem necessary to prosecute said claims and do any and all things desired in handling said matters. Said attorneys hereby accept the employment and fee as set out above and agree to represent said Clients to the best of their ability. NOW, THEREFORE: KNOW ALL MEN BY THESE PRESENTS:

That We,* * *for and in consideration of the sum of One Dollar ($1.00), cash in hand paid, receipt of which is hereby acknowledged, and other valuable consideration, do hereby grant, bargain, sell, and convey unto the said J. H. Carmichael, Jr. and J. C. Stevens, and unto their heirs and assigns forever, an undivided one-fourth (1/4) working interest as set out above, in and to all of the oil, gas, and other minerals in, under, and upon the following described lands lying within the County of Miller and State of Arkansas, to-wit* * *

TO HAVE AND TO HOLD the above described property, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said J. H. Carmichael, Jr. and J. C. Stevens, and unto their heirs and assigns forever.

And We,* * *for and in consideration of the said sum of money and other valuable consideration, do hereby join in the execution of the foregoing conveyance and do hereby release and relinquish unto

the said grantees all of our rights and claims to dower and homestead in and to the above described property, to the extent of the rights and interest hereinabove described.

WITNESS our hands and seals this 13 day of May, 1940.

* * * CLIENTS."

Carmichael and Stevens were associates in the practice of law at the time of the execution of the instruments. Carmichael testified that the two of them performed legal services for the heirs who signed the documents in proceedings in bankruptcy in the Federal Court in Little Rock and in a suit in the Chancery Court of Miller County to recover working interests given other parties by numerous standard oil, gas and mineral leases. He also stated that all services called for by the contract were performed by him and Stevens after the expenditure of years of time and thousands of dollars of money, for which they had received no compensation or reimbursement. The instruments were prepared by Carmichael and Stevens. Records in the Federal Court in Little Rock indicated that there was production of oil from the lands. Carmichael testified this was stopped at the time he and Stevens filed an intervention on behalf of their clients in the Federal Court. It is stipulated that neither Carmichael nor Stevens has ever attempted oil or gas development, executed or received leases or any agreement or contract with any other party dealing with the mineral interests. Carmichael said that he had paid taxes on the mineral rights for almost twenty years. There was no oil or gas lease on the property when this action was filed.

Appellant states twelve points on which he relies but all relate to the validity and construction of the instruments. He contends that the instruments are not deeds of conveyance but simply contracts of employment

not creating any present interest, but if they were, the interest transferred was simply a lease without a term which had been abandoned by failure of appellees to develop for oil, gas and minerals within a reasonable time. Other contentions are that if this lease has not been abandoned, appellees are obligated to develop the properties when called upon to do so and that the instruments were void as contravening the rule against perpetuities.

Appellant places stress upon the following factors to sustain his position that there was no conveyance, or, at best, only a conveyance in the nature of a lease:

1. The instruments are labeled "CONTRACT".

2. That all Carmichael and Stevens were to receive was a one-fourth "working interest" or two-sevenths of the rights the lessees had under leases in existence at the time of the employment—the right to develop for oil, gas and minerals and to retain seven-eighths of the proceeds.

3. That the only result of the activities of Carmichael and Stevens was the loss by the McKellar heirs of such production as they then had.

4. That the contract was drawn by Carmichael and Stevens and should be construed more strongly against them.

5. That the instruments were so vague and uncertain as to render them void and inoperative.

A deed, or any other contract, should be examined to determine the intention of the parties. *Smart* v. *Gunnels,* 234 Ark. 567, 353 S. W. 2d 153. We find that it was the intention of the parties that the instrument convey, and that it did convey the grantors' interests in an undivided one-fourth interest in the oil, gas and minerals under and upon the lands involved. The instrument names the parties as grantors and grantees.

It has a granting clause using the words "grant, bargain, sell and convey." The habendum clause is in the form commonly utilized in conveyances. The instrument conveys the grantors' interests in the one-fourth interest not only in oil and gas, but in other minerals in, under and upon the lands. There is no provision for a time when drilling shall be done or provision for delay payments contained in the usual oil lease. It is hardly reasonable to suppose that these lawyers would have accepted employment which they could reasonably assume would require their services over a long period of time and the expenditure of considerable sums of money for compensation contingent upon profitable production on the lands obtained, if at all, through their efforts and expenditures. Nor is it plausible that they would, after performing the required services, do nothing at all to obtain production if they had accepted such a contract. It seems unlikely that the parties who signed this agreement, being already dissatisfied with production by a lessee in the business, would be satisfied to risk their possibility of improvement to two lawyers. It is also unlikely that parties who were so anxious to cancel leases on which they had unsatisfactory production would delay so long in asking cancellation of a contract abandoned by the opposite party. It is the terms of an instrument, not its name, which determine its character.

A portion of the preamble to the instrument having significance is the clause setting out specifically what Carmichael and Stevens are to do—represent the signers in prosecuting certain claims. Nothing whatever is said about their doing anything else. The "whereas" clauses set forth the reasons or inducements for entering into a contract and must be considered in determining the true intentions of the parties thereto. *United States Fidelity & Guaranty Co.* v. *Sellers*, 160 Ark. 599, 255 S. W. 26. There is no language in the instrument that places any other responsibility on the lawyers. It seems logical to us that if they had also had the responsibility

of developing the lands for oil and gas, this would also have been stated somewhere in the preamble.

We recognize that in their ordinary use, the words "working interest" mean that interest acquired by a lessee. In this sense it is the lessee's interest in the oil and gas produced over and above the owner's interest or royalty interest. It is a settled doctrine of equity, however, that the form of a transaction will never preclude inquiry into its real nature and that the intention of the parties must govern, irrespective of the form. This court has applied this rule in holding what appeared to be absolute deeds to be mortgages only. *Coleman* v. *Volentine,* 211 Ark. 594, 201 S. W. 2d 592. By application of this maxim of equity it has been said that a "contract of sale" could actually be a mortgage. *Maners* v. *Walsh,* 180 Ark. 355, 22 S. W. 2d 12. Language used in the opinion in the case last cited is particularly appropriate here:

"Another maxim of equity is that equity regards the substance rather than the form, or that equity regards the substance and intent, not the form. This principle is well established and is expressed in more or less similar language in many cases.* * * This maxim is as applicable at the present time as it was when it was first formulated. By force of principle equity goes behind the form of a transaction in order to give effect to the intention of the parties, either to aid an act abortive at law because formally defective or to impose a liability as against an evasion by a formal concealment of its true character. In the construction of a written instrument, equity always attempts to get at its substance, and to ascertain, uphold, and enforce the rights and duties that spring from the real intention of the parties. In doing so, while it will of course not change the words of the instrument, the court of equity will look into all the circumstances under which it was made, in order to determine the proper meaning of

the transaction. It will do this not only to sustain a just claim but to defeat an unlawful demand. 21 C. J. 204, 205.

Equity looks beyond the mere form in which the transaction is clothed and shapes its relief in such way as to carry out the true intent of the parties to the agreement, and to this end all the facts and circumstances of the transaction, the conduct of the parties thereto, and their relations to one another and to the subject-matter are subjects for consideration."

In construing a contract the court must, if possible, give effect to the intention of the parties as far as that can be done consistently with legal principles, and this intention must be ascertained from the whole contract. *Dent* v. *Industrial Oil & Gas Co.*, 197 Ark. 95, 122 S. W. 2d 162; *American Snuff Co.* v. *Stuckey*, 197 Ark. 540, 123 S. W. 2d 1063.

To arrive at the intention of the parties to a contract, courts may acquaint themselves with the persons and circumstances and place themselves in the same situation as the parties who made the contract. *American Snuff Co.* v. *Stuckey, supra.* This is so the court can view the circumstances as they viewed them, so as to judge the meaning of the words and the correct application of the language to the things described. *Taylor* v. *Taylor*, 240 Ark. 376, 399 S. W. 2d 498. The court should arrive at the sense in which the words used would naturally be understood, taking into consideration the circumstances surrounding the making of the contract, the situation and relation of the parties. *Scrinopskie* v. *Meidert*, 213 Ark. 336, 210 S. W. 2d 281. Doing this, it would not be unreasonable to believe that not only Carmichael and Stevens construed this instrument to convey the grantors' interests in an undivided one-fourth interest in oil, gas and minerals, but that the clients (grantors) and their successors in interest must have too. The construction that the parties have placed

on a contract is entitled to great weight in interpreting it. *Owen* v. *Merts,* 240 Ark. 1080, 405 S. W. 2d 273. The intention of the parties is to be gathered, not from some particular phrase, but from the whole context of the agreement. *Arkansas Power & Light Co.* v. *Murry,* 231 Ark. 559, 331 S. W. 2d 98. The language of a contract, as a whole, should be so construed as to make apparently conflicting provisions reasonable and consistent and so as not to give one of the parties an unfair and unreasonable advantage over the other. *Scrinopskie* v. *Miedert, supra.*

When we apply these well known rules of construction, we must come to the conclusion that there was a conveyance of an interest in the oil, gas and minerals.[2] As we have construed the instrument, there was a conveyance of a present interest so the rule against perpetuities is not applicable. *Hanson* v. *Ware,* 224 Ark. 430, 274 S. W. 2d 359.

Appellant contends alternatively that the court should have granted his prayer for partition and cites Ark. Stat. Ann. § 34-1801, et seq., (Repl. 1962). This statute provides for partition on petition of any person having any interest and desiring a division of land held in common. There can be no doubt that under our construction of the contract, the interest of appellees is an interest in land. This court has held that a mineral deed placed of record constitutes a constructive severance of the minerals from the surface and makes two titles, one

---

[2]Treatment of the words "working interest" as meaning something other than their purely technical definition is not novel. In disposing of a similar problem, the Supreme Court of Oklahoma has given recognition to the fact that the term "working interest" is not always used in its technical sense and that it is often used to denote merely an interest in the mineral rights, particularly when a conveyance has specified the proportionate interest in royalty or mineral rights to be held by the grantor and the grantee, when consistent with the other provisions of the instrument as a whole. *Colonial Royalties Co.* v. *Keener,* 266 P. 2d 467 (Okla. 1953).

the surface and the other the mineral title. *Skelly Oil Co. v. Johnson,* 209 Ark. 1107, 194 S. W. 2d 425. It has also been said that the sale of an undivided mineral interest operates as a severance of soil interest from the surface and creates two separate and distinct estates. *Neilson v. Hase,* 229 Ark. 231, 314 S. W. 2d 219. The interest of appellees would not be an interest held in common with the owners of the surface in the sense of § 34-1801. On the other hand, the ownership of the minerals would be such an interest and the statute would be applicable to a division of the mineral interests, on the petition of the owners of the surface and an undivided interest in the minerals. This holding seems to be in keeping with the weight of authority, it being generally held that minerals, as a part of the real estate, if held in cotenancy, may be the subject of partition.[3] See Annot., 173 ALR 854.

Generally, partition, either by partition in kind or by sale and division of proceeds, is something to which each contenant has an absolute and unconditional right, under both common law and statute. Freeman on Cotenancy and Partition, § 433, p. 571; Knapp on Partition, p. 27; Annot., 15 Ann. Cas. 778; 2 Williams & Meyers Oil & Gas Law, § 506.2, p. 601. The basis for such right is well expressed in *Dall* v. *Confidence Silver Mining Co.,* 3 Nev. 531, 93 Am. Dec. 419 (1867) where it was said:

"* * *As the law deems it against good morals to compel joint owners to hold a thing in common, a decree of partition may always be insisted on as an absolute right. It is not necessarily founded upon any misconduct of the co-tenants or part owners. Hence, in decreeing a partition, the rights and equities of all the parties are respected, and the partition decreed so as to do the least possible injury to

---

[3]A discussion of judicial partition relating to oil and gas rights will be found in § 6.3, et seq., 1 Kuntz, Law of Oil & Gas.

the several owners; and 'courts of equity,' says Mr. Story, 'may, with a view to the more convenient and perfect partition or allotment of the premises, decree a pecuniary compensation to one of the parties for owelty or equality of partition, so as to prevent any injustice or unavoidable inequality', Story's Eq. Jur., sec. 654.''

See, also, *Holland* v. *Shaffer,* 162 Kan. 474, 178 P. 2d 235 (1947).

The fact that interests in oil, gas and minerals are involved does not change the problem. Of this situation, Kuntz, in The Law of Oil & Gas, § 5.7 at p. 121, says:

"Where the ownership of oil and gas rights is divided among various owners, the possibility of an unknown or uncooperative cotenant presents difficult problems for a cotenant who wishes to develop the land for oil or gas purposes or who desires to lease it for operation by another.''

See, also, *Allies Oil Co.* v. *Ayers,* 152 La. 19, 92 So. 720 (1922).

It has long been recognized in other states that the owners of undivided interests in minerals are entitled to either partition or sale against the remaining owners, even under statutes worded as § 34-1801 was before the 1941 amendment. *Canfield* v. *Ford,* 16 How. Pr. 473 (N. Y. 1857), 28 Barb. 336 (1858) *Brown* v. *Challis,* 23 Colo. 145, 46 Pac. 679 (1896). See, also, *Hughes* v. *Devlin,* 23 Cal. 501 (1863).

A Mississippi statute provided for partition by tenants in common of any joint interest in the freehold. The Supreme Court of Mississippi held that under this statute the owner of the entire surface and an undivided one-half interest in the minerals was entitled to have a partition of the mineral interest. *Wright* v. *Ingram-Day Lbr. Co.,* 195 Miss. 823, 17 So. 2d 196.

The Court of Appeals of Kentucky held that the owner of the surface in fee simple and of an undivided one-half in oil, gas and other minerals was entitled to partition of the mineral rights under their partition statute which required the showing of a vested possessory estate in land which is jointly held in any manner. *Terteling Bros., Inc.* v. *Bennett,* 287 S. W. 2d 607 (Ky. 1956).

The Texas Court of Appeals, in *Henderson* v. *Chesley,* 273 S. W. 299 (Tex. Civ. App. 1925), aff'd. 116 Tex. 355, 292 S. W. 156 (1927), held that the owner of an undivided one-half interest in mineral rights was entitled to partition against the owner of the fee and an undivided one-half interest in the minerals under a statute which gave any joint owner or claimant of any real estate or any interest therein the right to compel partition.[4]

It is suggested by appellees in their brief, however, that it would be a great injustice to them to partition the mineral interest in kind and that there is no need to require this interest to be sold. It has been said that this absolute or unconditional right cannot be defeated by showing that a partition would be inconvenient, injurious or even ruinous to a party in interest. Freeman on Cotenancy & Partition, § 433, pp. 569, 571; 2 Williams Oil & Gas Law, § 506.2, p. 601, § 506.3, p. 602.

The manifest hardship arising from division of property of an impartible nature has been generally and almost universally avoided by statutes authorizing sale of the property when its division in kind would tend to greatly depreciate its value or otherwise seriously prejudice the interests of cotenants. Freeman on Cotenancy

---

[4]Although the statute had been amended, at the time of this decision, to specifically cover the interest involved, there was a contention that the amendment did not apply in this case. The court said that it made no difference which statute applied, because the original statute authorized the action.

& Partition, § 433, p. 571; Annot., 15 Ann. Cas. 778, 779; *Richardson* v. *Monson,* 23 Conn. 94 (1854). This was the object of such statutes. *Wilson* v. *Bogle,* 95 Tenn. 290, 32 S. W. 386 (1895). See, also, 2 Williams Oil & Gas Law, § 506.2, p. 601, § 506.3, p. 603. This purpose was reconized in *Sutton* v. *McClain* (on rehearing), 193 Ark. 49, 99 S. W. 2d 236, 241. This court has also recognized that, in any case to which Ark. Stat. Ann. § 34-1801 (Repl. 1962) is applicable, the right to partition or sale is absolute, no matter how small the interest of the owner seeking partition or how great the majority who object. *Overton* v. *Porterfield,* 206 Ark. 784, 177 S. W. 2d 735. We do not have here the type of partition suit provided by Ark. Stat. Ann. § 53-401 *et seq.* (Act 15 of 1935), which is designed to provide for a sale of the "oil and gas lease rights" or "leasehold estate only" and not of the interest in oil, gas and minerals which we have found were conveyed by the instrument in question here. The interest of appellees is clearly covered by the language of § 34-1801 and if there is any conflict, the present language of the latter section must control, for it was adopted in 1941.

Dictum in *Overton* v. *Porterfield, supra,* wherein partition and sale of the oil and gas leasehold were involved, expressed the thought that, in such case as was there involved, § 53-401 *et seq.* did not impose upon a court of equity the imperative duty to order a sale whenever a proper petition was filed. The court said that a rule adopted in Oklahoma might apply in this type of case under certain circumstances. That rule, quoted in the opinion from *Wolfe* v. *Stanford,* 179 Okla. 27, 64 P. 2d 335 (1937), is that the court should be vested with discretion to grant or deny relief in order to prevent the right to partition from becoming a weapon of oppression and fraud in the hands of the financially fortunate who might use the right as a means of foreclosure of an owner of limited means. The Oklahoma Court clearly qualified this discretion as existing only in cases where there was no disagreement between the parties

rendering co-ownership impractical and stated specifically that inability of a cotenant to purchase should not constitute a defense in the absence of approaching development or rapidly increasing values. The qualification was applied in *Henson v. Bryant,* 330 P. 2d 591 (Okla. 1958).

But even in those cases wherein the doctrine that the equity court has the discretion to deny either partition or sale to prevent the remedy from becoming an instrument of fraud or oppression, it is generally held that the matter is one of defense to be pleaded and proved as such. *Henson v. Bryant, supra; Colonial Royalties Co. v. Hinds,* 202 Okla. 660, 216 P. 2d 958 (1948); *Williams v. Neal,* 207 Okla. 552, 251 P. 2d 785 (1952); *Holland v. Shaffer,* 162 Kan. 474, 178 P. 2d 235 (1947); *Gillet v. Powell,* 174 Kan. 88, 254 P. 2d 258 (1953). In this case, appellees did not plead their present contention that a decree of partition or sale would constitute fraud or oppression against them, nor did they offer any evidence tending to support such a claim.

We therefore, modify the decree of the chancellor to award appellees an undivided one-fourth interest in oil, gas and minerals, to the extent of the undivided interest conveyed by the grantors in the "contracts." Appellees' interests were found by the trial court to be 13/27 of ¼ of ⅞. Neither party questions this finding. We affirm the decree as modified, except as to the failure to grant partition of the mineral estates. We remand the case for appropriate proceedings for partition of the mineral interests, either in kind or by sale. In its proceeding, the trial court should bear in mind the peculiar nature of the property rights involved. Upon remand, the trial court should correct its decree so as to conform to this opinion.

Affirmed as modified and remanded.