F.R. VESTAL *v.* Martha R. VESTAL

CA 88-389                                   771 S.W.2d 800

Court of Appeals of Arkansas
Division II
Opinion delivered June 21, 1989

*Hopkins & Erwin, P.A.*, for appellant.

*Rose Law Firm, A Professional Association*, by: *Jess Askew III*, for appellee.

JOHN E. JENNINGS, Judge. Appellant, Frank Vestal, and appellee, Martha Vestal, were married in 1963. During the marriage appellant acquired one hundred percent of the stock in PRO Files, Inc., and Ryan Leasing Company, and seventy-five percent of the stock in Cinesport, Inc. On November 17, 1987, appellant signed an agreement to sell all of his stock in those three corporations to World Bass Association, Inc., for $80,000.00. On that same date he entered into an agreement entitled "Consulting Contract and Covenant Not to Compete" with WBA, in which WBA agreed to pay appellant $1,600,000.00 in twenty annual installments of $80,000.00.

The appellee was granted a divorce by the Pulaski County Chancery Court on June 14, 1988, and was awarded a one-half interest in the proceeds of both contracts. The chancellor specifically found that the amount payable under the "consulting contract" was really additional compensation for the sale of the

businesses. The argument on appeal is that the chancellor was wrong in awarding Mrs. Vestal any interest in the proceeds of the consulting contract. We disagree and affirm.

Appellant concedes that his stock in the three corporations, and therefore the proceeds from its sale, were marital property subject to division by the court. He contends, however, that "compensation for future services as an employee is not a generally accepted form of marital property." While we do not disagree with this proposition, the answer is that the chancellor made a specific finding that the payments due appellant under the consulting contract were not "compensation for future services" but were, in fact, additional compensation for the sale of the businesses. The real issue in the case at bar is whether that finding of fact is clearly erroneous.

Appellant contends that the agreement provided that he would be employed by WBA to "consult, sell, advertise and generally help obtain sponsorship and named personalities for the business." The second paragraph of the contract, however, does not support these contentions:

> 2. *Duties of Vestal.* For a period of three years, Vestal will render to WBA such services of an advisory or consultive nature as WBA may reasonably request, so that WBA may continue to have the benefit of Vestal's experience and knowledge of the affairs of the business WBA is involved in and of his reputation and contacts in the industry, and he will be available for advice and counsel to the officers of WBA at all reasonable times by telephone, letter or in person, provided, however, that his failure to render such services or to give such advice and counsel by reason of illness or other incapacity shall not affect his right to receive his compensation during such period.

The chancellor also noted that if appellant died, the payments were to be made to his estate. Appellant also argues that the "Consulting Contract and Covenant Not to Compete" was a separate and distinct contract from the contract for sale of stock. The latter contract, however, provides in part:

> As further consideration, *which all parties agree to be an integral portion of the compensation being paid for the*

*purchase of the stock,* WBA agrees to enter into a consulting contract and covenant not to compete with Vestal. . . . (Emphasis added.)

■ There was, as appellant notes, evidence from which the court could find that the three businesses had little net worth at the time of sale. There was also, however, evidence that the businesses had net assets in excess of $3,000,000.00 within two years of the date of sale. In any event, while the value of the stock in the corporations may have been an appropriate factor for the chancellor to consider in deciding the issue here, it certainly is not determinative.

■ While we review chancery cases *de novo,* we defer to the chancellor's superior position to find the facts, and reverse his findings only if they are clearly erroneous. *City National Bank of Fort Smith* v. *First National Bank & Trust Co. of Rogers,* 22 Ark. App. 5, 732 S.W.2d 489 (1987).

■ Courts of equity have traditionally not hesitated to see through the form of a transaction in order to ascertain its true nature. In *Williams* v. *Cotten,* 9 Ark. App. 304, 313-314, 658 S.W.2d 421, 426 (1983), we said:

Equity looks beyond the mere form in which the transaction is clothed and shapes its relief in such way as to carry out the true intent of the parties to the agreement, and to this end all the facts and circumstances of the transaction, the conduct of the parties thereto, and their relations to one another and to the subject-matter, are subjects for consideration. (Citing *Maners* v. *Walsh,* 180 Ark. 355, 22 S.W.2d 12 (1929)).

■ Under the facts of the case at bar, we are unable to say that the chancellor's finding that the payments due appellant under the terms of the "consulting contract" were, in reality, additional compensation for the sale of stock, was clearly erroneous.

Affirmed.

CORBIN, C.J., and MAYFIELD, J., agree.